HENRY C. JUDD AND ANOTHER *vs.* GEORGE A. WEBER.

Hartford District, Jan. T., 1887.  PARK, C. J., CARPENTER, PARDEE,
LOOMIS and GRANGER, Js.

Where goods have been obtained on credit by means of representations
known to be false, it is no defense that the purchaser expected to be
able to pay for them and had no intention of subjecting the seller to a
loss.

A fraudulent representation to obtain a general credit is admissible in evi-
dence against the party who made it, although the bill for the goods
then bought was paid when it fell due, and the purchase of the goods
that were not paid for was made some time after.

[Argued January 13th—decided February 11th, 1887.]

ACTION for fraud in the purchase of goods on credit,
brought to the Superior Court in Hartford County. The
following finding of facts was made by the court:

The plaintiffs are dealers in wool, residing and doing
business in the city of Hartford. This suit is brought to
recover damages for a fraud which they claim was practiced
upon them whereby they were induced to sell certain wool
upon credit.

The defendant at the time of the sale was a resident of
New York. Frank S. Smith was a resident of Hampden, in
the state of Massachusetts. The plaintiffs had known Smith
for a number of years as the agent and manager of the La-
cousic Woolen Company, and knew that he had had experi-
ence in running a woolen factory, and in the manufacture
of woolen cloth. That company had shortly before become
bankrupt and the plaintiffs understood and believed that
Smith was not a man of much pecuniary means; of Weber,
the defendant, they had no previous knowledge.

On the 15th day of November, 1883, Smith and Weber
called at the store of the plaintiffs, when Smith introduced
Weber to them and stated that he and Weber had formed a
partnership, had purchased a woolen factory at Hampden,
Massachusetts, formerly known as the Lacousic Woolen Mill,
and that they proposed to go into the business of manufact-

uring woolen goods; and that they desired to purchase wool, and wished to open an account with and obtain a line of credit from the plaintiffs. The plaintiffs, believing that Smith was not possessed of much means, inquired of the defendant as to the capital and means which he possessed. And in response the defendant stated that they, Smith and Weber, had purchased the mill and the machinery in it for $25,000, and that there was no incumbrance on it; that he was himself worth from $25,000 to $30,000; that he had put into the firm $25,000 of his own money, and which was not borrowed, and that the firm of Smith & Weber had a capital of $50,000, which would be at the risk of their business. By these statements the defendant and Smith intended to have the plaintiffs believe, and they did believe, that the copartnership of Smith & Weber had a capital of $50,000 that would be at the risk of the business in which they were about to engage, and at the risk of nothing else; in other words, that they had a capital of $50,000 which would be liable for such debts as they should make in their business, and that there were no other debts, individual or otherwise, for which such capital could or would be made liable.

Relying upon these statements the plaintiffs granted to Smith & Weber a line of credit, and sold them wool on credit on that day and on sundry other days thereafter, and received payments from them from time to time on account.

On the 22d day of February, 1884, the defendant and Smith were again at the store of the plaintiffs, and desired to make a large purchase of wool upon credit. They were then indebted to the plaintiffs about $3,000. In answer to inquiries the defendant then stated that the firm of Smith & Weber was at that time in as good condition financially as it was when they commenced business in the November previous; that there was no incumbrance on their mill, and that they then had a cash capital of from $22,000 to $23,000, not borrowed, all at the risk of their business. By this statement the defendant designed to have the plaintiffs believe, and the plaintiffs did believe, that the capital of Smith & Weber was of the amount so stated, and that there were no

debts other than the debts which they had made in the trans-
action of their firm business for which their capital could be
made liable. Relying on this statement the plaintiffs sold
wool to the firm on that day to the amount of $7,304.83, on
credit.

Prior to the 15th day of November, 1883, the defendant
had been engaged in the storage business in the city of New
York, which business was on that day in process of liquida-
tion. He had no property or means of his own, of any kind,
except his interest in that business. The cash account of
Smith & Weber showed only $1,600 coming into the assets
of that firm from the storage business. The defendant had
on that day standing to his credit in the Pacific Bank
of New York the sum of $15,000, which was money that he
had borrowed of one Fairweather. The Lacousic Woolen
Mill had been deeded to the defendant, and the defendant
had deeded an undivided one half of it to Smith. Both the
deeds were left for record on the afternoon of that day.
Neither Smith nor the defendant had paid anything on the
purchase price.

All the sales of wool by the plaintiffs to Smith & Weber,
and to the defendant, and all payments made to the plaintiffs
on account, appear by the bill of particulars in the case.
(This is omitted as not important.)

On April 1st, 1884, Smith & Weber dissolved partnership,
Weber taking the business and the assets, including the
mill, and assuming all the debts and undertaking to pay for
the mill, for which, up to that time, nothing had been paid.
The firm debts at that time, including the indebtedness for
the mill, amounted to $42,500. Smith conveyed his interest
in the mill to Weber. While the partnership was in exist-
ence the defendant had paid in the sum of $16,600, of which
$15,000 was the money borrowed of Fairweather, and $1,600
from the storage business.

The defendant continued the business alone to the 3d day
of September, 1884, when he made an assignment in insol-
vency and conveyed the mill and all his other assets to his
assignee. During the time that the defendant was in the busi-

ness alone he borrowed money of his mother and others to the amount of $13,000. He made new debts in the business and made payments on the old one. Of the firm debt he paid about $12,500. He paid toward the mill $2,000. At the time of his assignment he was indebted on account of the business, including the unpaid price of the mill, $47,500; and for money borrowed $28,000. In his deed of assignment, which was made in New York, he made preferences to those persons of whom he had borrowed money. Not including the mill, these preferences more than exhausted all his assets.

The court finds that the defendant made representations to the plaintiffs in substance as set forth in the complaint, that such representations were made to induce the plaintiffs to sell wool to Smith & Weber on credit, and that the plaintiffs, believing such representations to be true, and relying upon them, did sell wool to Smith & Weber as hereinbefore stated, and that they would not have done so except for their belief that the representations were true.

The representations were not true, and the defendant knew that they were not true, except so far as the facts herein set forth show them to have been true; and the defendant knew at the time he made the representations that the plaintiffs would not have sold wool to the firm on credit except that they believed his story to be true.

It does not appear that in contracting the debt in question the defendant had any definitely formed plan or settled design to defraud the plaintiffs or to defraud anybody. He had had no especial business training. He was not an accountant. He was wholly ignorant of the trade in wool. He had never had any experience in running or managing a factory and knew nothing of the woolen manufacture. He had an exaggerated idea of the profits that could be made in that business, and had very much greater confidence in himself as a business man than the subsequent events would seem to justify. He was hopeful and trusting and was actuated by that easy credulousness which comes from inexperience. He hoped and expected to pay all the debts that

should be incurred from the profits which he hoped and expected to make. The facts, however, disclosed at the trial, show that there was never any reasonable ground for such expectation. Any person of reasonable prudence and with a reasonable knowledge of business, who knew all the facts exactly as the defendant knew them, would have foreseen that failure was inevitable, and that somebody would have to be cheated.

The plaintiffs have suffered damage to the amount of $2,760 by reason of the premises.

The defendant objected to the admission in evidence of the statement made on the 15th day of November, 1883, for the reason that the debt contracted on that day had been paid, as appeared by the plaintiffs' bill of particulars, and because the question of a fraudulent obtaining of a general credit was not in issue. The plaintiffs claimed the evidence to be admissible, for the reason that it did tend to prove a fraud in obtaining a general credit, and for the further reason that the statements made on the 15th day of November, 1883, were expressly referred to in the statement made on the 22d of February, 1884, and so were a part of the latter statement. The court admitted the evidence.

Among other evidence offered by the plaintiffs was the following letter from Smith & Weber, which was in the handwriting of the defendant:

"HAMPDEN, MASS., February 28th, 1884.

"MESSRS. H. C. JUDD & ROOT: *Gent.* Your favor of the 23d inst. received in regard to a statement from us. The property we purchased from Mr. Hinsdale Smith, under foreclosure, for $25,000, for which Mr. Frank Smith gave his individual note, which was not a time note. Mr. Weber put in $25,000 in cash. The property has no incumbrances upon it except $1,000 for looms, which the firm assumed. We presumed we had made a clear statement when we made our first purchase in November, and sincerely hope you will not use this letter any further than for your own information. Trusting this is satisfactory, we are yours truly,

"SMITH & WEBER."

The defendant objected to the letter for the reason that it was written after the contracting of the indebtedness in question, and explained only the statements of November 15th, 1883, which latter statements themselves were not admissible. The court admitted the evidence.

Upon these facts the court (*Andrews, J.,*) rendered judgment for the plaintiffs for $2,760 damages. The defendant appealed.

*W. Hamersley*, for the appellant.

1. This action is to recover damages for fraud in contracting a debt. Under the act of 1842, which provides for such an action, it is essential, to support a judgment for the plaintiffs, that actual as distinguished from constructive fraud be proved. The statute is, in effect, the same as if it read: Whoever at the time of contracting a debt is guilty of acts that prove specific intent to cheat and defraud his creditor, and whoever after contracting a debt attempts to defraud his creditor by concealing his property, may, if the creditor be aggrieved thereby, be sued for the debt and imprisoned on such suit. And so this court has indicated. Fraud in contracting a debt means actual, as distinguished from constructive, fraud. The following are the only decisions of this court upon the construction of the clause of the statute under discussion. The language of the statute is spoken of as uncertain. *Armstrong* v. *Ayres*, 19 Conn., 540 ; *Cowles* v. *Day*, 30 id., 406. The statute creates not merely a new remedy, but a new form of action. *Cowles* v. *Day, supra.* The object of the statute is to except from the statutes for the exemption of the body, debts in the contracting of which the debtor has been guilty of fraud, and to create an action, sounding in tort, for the collection of such debt as a debt. *Ib.* Such a debt means a debt arising out of express contract. *Lynch* v. *Hall*, 41 Conn., 238. The fraud in contracting such a debt must be actual, as distinguished from constructive fraud. *Day* v. *Webb*, 28 Conn., 145. The debt is the rule of damages. *Cowles* v. *Day*,

*supra.* A similar construction has been given to a like statute in New York. *Morris* v. *Talcott,* 96 N. York, 100.

2. Actual fraud was not proved upon the trial, and was not found by the court. The finding purports to contain all the facts in evidence, and sets forth particularly all the detailed and subordinate facts upon which, as a conclusion of law, the court finds the principal facts essential to support the judgment. The court specially finds no actual fraud. Here is what it finds: " It does not appear that in contracting the debt in question the defendant had any definitely formed plan or settled design to defraud the plaintiffs or to defraud anybody." The court explains this conclusion by saying that a person of reasonable prudence and with a reasonable knowledge of business would have foreseen failure and that somebody would be cheated, but the defendant did not have reasonable prudence and had no knowledge of the business. " He was hopeful and trusting, and was actuated by that easy credulousness which comes from inexperience. He hoped and expected to pay all the debts that should be incurred from the profits which he hoped and expected to make." An examination of the subordinate facts, as found by the court, shows that the only conclusion of law admissible is that there was no fraud in contracting the debt in question. It appears that the only representations untrue in substance were that Weber was worth from $25,000 to $30,000, and that the money put in by him was not borrowed. It further appears that the material representations were that the firm owned the mill and had $25,000 " at the risk of the business." These were true in substance,—the firm did own the mill, it was at the risk of the business, and $29,000 was actually invested in the firm business by Weber. It further appears that the unpaid firm debts did not exceed $5,000, for which the mill was clearly liable before any individual debts could be paid. It is difficult to infer fraud from these facts. The misrepresentations were a small part only of the representations relied upon, and in themselves not essential. A willful false statement is only evidence of fraud. *Salisbury* v. *Howe,* 87

N. York, 135.   The firm property was ample for all unpaid firm debts, and there was no damage unless through laches on the part of creditors.   But to infer actual fraud is impossible.   The statute requiring actual fraud to be proved and found, and the record showing that actual fraud was in fact neither proved nor found, the judgment is clearly erroneous, and the defendant entitled to a new trial.   And even if the record showed that the facts would sustain an action at common law, the error is of substance.   The defendant has tried his case on the statute and evidence which would be admissible in an action at common law has been shut out.   It is sufficient only to mention the matter of damages.   Under the statute they are liquidated; at common law they are unliquidated.   Under the statute the debt measures the damage; at common law the debt is abandoned and actual damage must be proved.   *Whiteside* v. *Hyman*, 10 Hun, 218.   In this case the plaintiffs charge some $18,000 for the wool sold.  The defendant has paid them over $15,000.   The wool received by the defendant may not be worth $12,000.   In an action for obtaining the wool by fraud this question is in issue.   Under the statute such issue is excluded.

3. The court was confined to the issue raised by the pleadings, namely, was the defendant guilty of fraud in contracting the particular debt alleged and admitted.   *Graves* v. *Waite*, 59 N. York, 156 ; *Barnes* v. *Quigley*, id., 265 ; *Austin* v. *Barrows*, 41 Conn., 287, 301.   But in this case the record does not even disclose the facts necessary to support a judgment in an action for fraud at common law.   The facts essential to such an action are fully stated in *Atwood* v. *Small*, 6 Cl. & Fin., 443.   The great number of cases on this subject only confirm the authority of this case.   The misrepresentation found must be material to the issue.   *Merwin* v. *Arbuckle*, 81 Ill., 502; *Taylor* v. *Scoville*, 54 Barb., 35.   The plaintiff cannot resort to his action in tort if he does anything affirmatory of the contract.   *Kellogg* v. *Turpie*, 2 Bradw., 55 ; Chitty on Cont., 680.

4. In an action on the statute, as well as in an action of fraud at common law, damage resulting from the fraud must

be alleged and proved.   The only usual damage is inability to collect the claim, because the defendant is insolvent, or, at least, because no property can be found subject to execution. In this case the insolvency of both partners, Smith as well as Weber, is alleged, and must be proved.   There is no evidence of the insolvency of Smith.   The facts disclose the existence of property subject to execution, and sufficient to pay this and all the firm debts.

5. The court erred in the admission of testimony as set forth in the finding of facts and alleged in the reasons for appeal.

*A. P. Hyde*, for the appellees.

LOOMIS, J.   The complaint in this case alleges in substance that the defendant, in order to obtain on credit from time to time large quantities of wool of the plaintiffs, for the firm of Smith & Weber, of which he was at the time a member, stated to the plaintiffs that the firm had a capital of fifty thousand dollars solely at the risk of the business; that the defendant individually was worth from twenty-five thousand to thirty thousand dollars, and had contributed in cash from his own money, not borrowed, twenty-five thousand dollars towards the capital of the firm; and that all these statements were false and known to be so by the defendant when he made them, and that the plaintiffs believing the statements true sold and delivered the goods asked for on credit and thereby suffered loss to the amount of two thousand seven hundred and sixty dollars.

The court finds that the defendant did make the false statements as charged, that he knew them to be false, that he made them for the purpose of inducing the plaintiffs to sell to the defendant's firm on credit, and that he knew the plaintiffs would not have given the credit except for their belief that the representations were true, and that the plaintiffs, believing the statements true and relying upon them, did sell on credit wool to the defendant's firm as claimed by them, and that the plaintiffs suffered damage by reason of

the premises to the amount of two thousand seven hundred and sixty dollars. The court rendered judgment for the plaintiffs for this amount and the defendant appealed.

The reasons for appeal as stated on the record are quite numerous, but they may all be disposed of by the answers we may give to the following questions:—Does the finding of the court show that the defendant was guilty of actual fraud, and, if so, did the plaintiffs suffer any injury in consequence, and did the court err in admitting evidence?

The finding, as we have stated its substance above, gives a most emphatic answer to the first question in the affirmative. But the defendant's counsel base their claim that there was no actual fraud upon an additional clause in the finding, which is as follows : " It does not appear that in contracting the debt in question the defendant had any definitely formed plan or settled design to defraud the plaintiffs or to defraud anybody. He had had no especial business training. He was not an accountant. He was wholly ignorant of the trade in wool. He had never had any experience in running or managing a factory and knew nothing of the woolen manufacture. He had an exaggerated idea of the profits that could be made in that business, and had a very much greater confidence in himself as a business man than the subsequent events would seem to justify. He was hopeful and trusting and was actuated by that easy credulousness which comes from inexperience. He hoped and expected to pay all the debts that should be incurred from the profits which he hoped and expected to make. The facts, however, disclosed at the trial, show that there was never any reasonable ground for such expectation. Any person of reasonable prudence and with a reasonable knowledge of business, who knew all the facts exactly as the defendant knew them, would have foreseen that failure was inevitable and that somebody would have to be cheated."

This may have lessened the moral turpitude of his act, but it will not suffice to antidote and neutralize an intentionally false statement which had already accomplished its object of benefiting himself and of misleading the plaintiffs to their injury.

Actual or positive fraud consists in deception, intentionally practiced to induce another to part with property or to surrender some legal right, and which accomplishes the end designed.

All that this additional finding shows, is, that the defendant's fraud did not consist in a preconceived design not to pay for the wool, but the fraud was directed to the obtaining of the plaintiffs wool on credit, by statements known to be false, which he knew could not be obtained if he told the truth, and the fraud was complete when the end was accomplished and damage resulted. It is a mistake to suppose that it is essential to a fraudulent intent that it should reach forward and actually contemplate the resulting damage to the other party. There is a fraudulent intent if one with a view of benefiting himself by intentional falsehood misleads another in a course of action which may be injurious to him. The ulterior hopes and expectations of the defendant, so much relied upon, were utterly immaterial. It is true that the motive to pay at some future time was innocent, but the motive to obtain present possession and title to another's property by the use of falsehood and false pretenses, throwing all the risk of loss on another, was corrupt. As well might the embezzler of another's funds plead his innocent purpose of ultimate restitution, or the forger of another's name as indorser of a note plead his purpose to pay the note himself at maturity. It is conceivable even that one might be guilty of larceny by taking another's money to meet some present exigency of his own while pleading in the forum of conscience his purpose to make it all right at some future day. Such pernicious reasoning can be accepted neither in the forum of conscience nor in that of law.

There are some decisions in other jurisdictions which we think misled the counsel for the defendant into the erroneous position we have endeavored to controvert. The case of *Morris* v. *Talcott*, 96 N. York, 100, was cited. There the Court of Appeals found error in the court below in denying a motion to vacate an order for the arrest of the body, but it was placed on the ground that " there was no evidence in

the case to support the charge of fraudulent representations, except the fact that the defendant upon being requested by the plaintiffs to give them an indorser upon a note for the balance of an existing account, refused to do so, saying he was "perfectly good and solvent without an indorser." So in *Dyer* v. *Tilton*, 23 Verm., 313, and *Jude* v. *Woodburn*, 27 id., 415, (cases not cited by the defendant,) we find the general proposition that an action for damage will not lie for false and fraudulent representations made by the defendant in reference to his own pecuniary responsibility and circumstances, whereby the plaintiff was induced to sell property upon credit. But these cases were expressly placed on the ground that the representations were expressions of opinion and not false assertions of fact, and this is the important distinction which controls the case at bar. Here there was false assertion as to specific facts which induced the delivery of the wool on credit.

The next question, whether the finding shows that damage to the plaintiffs resulted from the fraud, may be summarily disposed of by reference to the record. The finding is that "the plaintiffs have suffered damage to the amount of $2,760 by reason of the premises." It is to be presumed in the absence of anything to the contrary that there was appropriate evidence to justify the finding, and this answer is conclusive. But the precise point which the defendant makes in this connection is, that the subordinate facts as detailed in the finding do not show that the plaintiffs' debt might not have been collected out of Smith, the other partner of the defendant. The court finds that Smith was connected with a company that previously owned the premises purchased by the firm of Smith & Weber, and that this company had become insolvent, and that when the defendant bought the wool the plaintiffs understood and believed that Smith was a man of no pecuniary means, and it is pretty obvious that the fact of Smith's insolvency was tacitly at least conceded by the defendant during the trial. At any rate no question whatever was raised in the court below in regard to this matter, and we may accept the finding of the

court in regard to the damage as conclusive, with full assurance that no injustice was done the defendant in this regard.

There remain to be considered only two questions respecting the admission of evidence, and these are of such a nature as to require little discussion. The court finds certain fraudulent representations made on the 15th of November, 1883, and again on the 22d day of February, 1884. The defendant objected to the statements made on the 15th of November because it appeared by the plaintiffs' bill of particulars that the debt contracted on that day was afterwards paid, and because the question of a fraudulent obtaining of a general credit was not in issue. We think the evidence was admissible. On that day the defendant applied to the plaintiffs to purchase wool of them, not simply at that time, but from time to time in the future, to supply the mill of Smith & Weber. The finding is that he " wished to open an account with and obtain a *line of credit* from the plaintiffs," so that the representations on that day were the first and continuing moving cause to induce the plaintiffs to sell the defendant goods on credit in the future, and did tend to prove fraud in obtaining a general credit; and then the representations which followed on the 22d day of February were made to induce the plaintiffs to continue the credit, and expressly referred to and re-affirmed the truth of the false statements of the November previous, so that the statements were so interlocked as to become virtually one.

The letter of February 28th, 1884, which was objected to, expressly referred to the original statements in November previous, admitting that they were made and re-affirming that they were true. It was therefore clearly admissible.

Another question of evidence is referred to in the last error assigned, but as no objection on that account was made in the court below it need not be considered.

There was no error in the judgment complained of.

In this opinion the other judges concurred.