H. BODDY, Appellant, v. B. F. HENRY, Mrs. B. F. HENRY, H. CONOVER, L. W. CONOVER, Appellees.

126   31
f133  341

126   31
137   541
137   700

126   31
j143  741

**False representations:** QUANTITY OF LAND. In an action for damages
1 based on false representations as to the quantity of land conveyed, tax receipts delivered by defendant to plaintiff stating the number of acres, were admissible as tending to show the vendor's knowledge of the amount of land.

**Admissibility of evidence.** Evidence which is competent for any purpose
2 is admissible, as its application may be limited by appropriate instruction.

**Instructions:** INTENT TO DECEIVE. In an action for false representations,
3 an intent to deceive will be presumed from proof of the falsity of the statements and defendant's knowledge thereof; and repeated instructions placing upon plaintiff the additional burden of showing that the representations were made with intent to deceive, and omitting from the entire charge any statement that fraudulent intent would be inferred from proof of the known falsity of representations, was error.

**Special interrogatories.** It was error to submit a special interrogatory
4 as to whether defendant guaranteed the quantity of land conveyed, where the real issue was whether defendant had made such representations that plaintiff had the right to rely thereon as a warranty.

**False representations:** EVIDENCE. In an action for false representations
5 as to the quantity of land, the evidence is reviewed and held sufficient to warrant a verdict that the alleged representations were made.

**False representations:** RELIANCE UPON. A purchaser of land may
6 rely upon the vendor's representations as to the quantity, even though he makes a personal inspection, not amountng to an investigation to satisfy himself, from sources independent of the vendor and his agents.

**Liability for false representations.** A refusal to guarantee the quantity
7 or quality of property sold, is not inconsistent with a liability for false representations in respect thereto.

**Qualified statement as to quantity.** Where a vendor represented the tract conveyed to contain "about" 17,000 acres when there was in fact but 15,300, such qualification did not defeat the vendee's right to damages for the false statement.

**Transfer of land:** FRAUD: DAMAGES. The sale by a corporation of its capital stock, its sole assets consisting of a tract of land, operated as a transfer of the land and entitled the vendee to an action for damages for false representations as to the quantity, the same as though the transfer had been by deed.

*Appeal from Franklin District Court.*—HON. J. H. RICH-
ARD, Judge.

THURSDAY, NOVEMBER 17, 1904.

THE opinion states the case.— *Reversed.*

*F. M. Williams* and *Albrook & Lundy,* for appellant.

*E. P. Andrews* and *W. A. Powell,* for appellees.

WEAVER, J.— In the year 1897 the defendants were the owners of substantially all of the capital stock of a corporation known as the Clay County Land & Cattle Company of Texas. They were also the officers and directors of said corporation. Nearly or quite all of the assets of the corporation were represented by a ranch in Clay county, Texas, which it had advertised for sale. At the same time the plaintiff was the owner of a farm of 1,760 acres in Franklin county, Iowa, which he desired to dispose of; and, through efforts of certain real estate brokers, the parties were brought into negotiation for an exchange of lands, which was effected on or about October 26, 1897. There was no conveyance of the Texas land to the plaintiff, but the same end was effected by a transfer of the capital stock of the corporation. On July 28, 1898, this action was begun at law to recover damages on account of alleged false and fraudulent representation by the defendants as to the quantity of land contained in the ranch, and upon ·trial

there were a verdict and a judgment in plaintiff's favor. On appeal to this court the judgment was reversed, and new trial ordered, on account of certain errors found in the record. *Boddy v. Henry,* 113 Iowa, 462. The petition, which has been amended and substituted since the cause was remanded, is stated in three counts: (1) That, to induce plaintiff to make the exchange, defendants represented to him that the ranch contained 17,334 acres of land, and that, believing and relying on said representations, he made the exchange, but has since discovered and charges the fact to be that the actual quantity of land owned by the corporation did not exceed 15,300 acres. He further alleges that defendants knew at the time that their said representations were untrue, and made the same to deceive and defraud him. (2) That he made said purchase of capital stock on the basis and understanding that the same represented land owned by the corporation to the extent of 17,334 acres, which land was worth from $6 to $10 per acre, but was afterward found to measure but 15,300 acres, thus resulting in a partial failure of consideration for said purchase. (3) That in effecting said exchange the defendants represented to plaintiff that the ranch contained 17,334 acres, and that on said basis the value of the capital stock was estimated and fixed by the parties at $30 per share; that in truth, as was afterward learned, said ranch contained but 15,300 acres, by reason of which fact the value of said capital stock was materially affected and reduced, to the plaintiff's loss.

On these allegations, judgment is demanded against the defendants in the sum of $27,000. A demurrer by defendants to the second count of this petition, and a motion to strike the same as stating no cause of action, were overruled, and defendants answered, admitting the exchange of property, but denying all other allegations made by the plaintiff. On trial to a jury there was a verdict for the defendants, and from the judgment rendered thereon the

plaintiff appeals.    The principal errors assigned and argued
will be considered in the following paragraphs.

It should also be stated, by way of preface to the discus-
sion of the errors assigned, that the trial court refused to
submit any question to the jury upon the second count of the
petition, but submitted the case on the theory that plaintiff's
cause of action was upon two counts only — first, fraud and
false representations as to the quantity of land; and, second,
representations and statements amounting to a warranty of
such quantity.

I.    The plaintiff introduced evidence tending to show
that during the negotiations for the exchange the defendants
stated and represented to him that the ranch contained
17,000 or more acres of land.    The defendant,
L. W. Conover, while insisting that he refused
to guaranty the acreage of the land, admits that
they told plaintiff there was about 17,000 acres, and says

1. FALSE REPRE-
SENTATIONS:
quantity of
land.

he then believed such to be the fact.    There was other evi-
dence tending strongly to show that the ranch, by actual
measurement, contained only about 15,300 acres.    In view
of this testimony, it then became a matter of importance
upon the issue of false and fraudulent representations for
plaintiff to show, if he could, that defendants knew these
representations were untrue.    As bearing upon this propo-
sition, the tax receipts for taxes paid upon the ranch prop-
erty by the corporation under date of December 25, 1895,
and January 27, 1897, which receipts, the plaintiff testified,
were delivered to him by the defendants, together with cer-
tain other papers and documents pertaining to the property
after the exchange had been effected, were offered in evi-
dence.    These receipts purport to describe the land in a
general way, stating the number of acres in the several
tracts, the aggregate of which shows a total of something
less than 15,000 acres.    This evidence was objected to by the
defendants as being incompetent, irrelevant, and immaterial;
and, the objection being sustained by the court, error is as-

signed by the appellant.  This ruling is defended by coun-
sel for appellees on the theory that the receipts do not tend
to show any notice to the defendants of the quantity of land
in the ranch, and that we cannot presume that defendants
ever read or knew what the receipts contained.  But it must
be remembered that notice or knowledge, like other material
facts, may ordinarily be established by circumstantial, as
well as by direct evidence, and we think the possession and
delivery of the receipts by defendants to the plaintiff afford
ground from which the jury might infer knowledge on de-
fendants' part of what was shown by those documents.

It is true that the law does not create any hard and fast
presumption that defendants had read the receipts, but when
it is shown that they had in their own hands papers con-
taining material information concerning valuable property,
of which, in their corporate capacity, they were the owners;
that they were vitally interested in knowing that the taxes
upon all the property were paid; and that they preserved
such papers and passed them to the purchaser — it is not an
unreasonable inference that they knew what was shown
thereby.  The evidence offered should have been admitted,
and allowed such weight and effect upon this phase of the
case as the jury might find it entitled to.

It is further argued with reference to the ruling under
consideration that the offer was general, and not confined to
the question of the defendants' knowledge, and that, in the
2. ADMISSIBILITY absence of such limitation, the jury might have
OF EVIDENCE. treated the receipts as substantive evidence of
the number of acres in the ranch, for which purpose, it is
said, they were clearly incompetent.  The point cannot be
sustained.  If testimony is admissible for any purpose, it
is not open to the objection of being immaterial or incom-
petent or irrelevant, and the party offering it is entitled
to have it go to the jury.  If its application or effect should
be limited to some particular proposition or issue, that
purpose can readily be accomplished by an appropriate in-

struction. It should be said, also, that the admissibility of the tax receipts as tending to show defendants' knowledge of the size of the ranch does not depend alone upon the inferences to be drawn from their possession. Mr. Butcher, defendants' manager, testifies to a statement made to plaintiff by the defendant Henry that he and his attorney " had gone through the papers " for the purpose of finding out how much land the ranch still contained, and had made it about 17,000 acres; and, at his direction, Butcher made a memorandum of the figures, and gave it to the plaintiff. This statement was, in substance, an assurance that Henry had examined all the papers relating to the land, and had obtained all the information they afforded.

II. The trial court instructed the jury that the first count of the petition stated a claim based on alleged false and fraudulent representations concerning the quantity of

3. INSTRUCTIONS: intent to deceive.

land in the ranch, and that, in order to recover thereon, plaintiff must establish by a preponderance of the evidence that defendants did make the alleged representations; that the representations were false; that plaintiff believed and relied thereon, to his injury, in entering into the contract; that defendants made the representations knowing them to be false; and also that they made the representations, intending thereby to deceive and mislead the plaintiff. The proposition that plaintiff was required not only to show that the defendants made the alleged false representations with knowledge of their falsity, but also to show that they intended thereby to deceive, was stated once or twice in each of five several paragraphs of the charge. The rule thus repeatedly emphasized to the jury is challenged by the appellant, and we think the objection must be held well founded. It is not correct to say that when the plaintiff in an action of this kind has proved that the alleged false representations were in fact made, and that defendants knew them to be false when made, there still remains upon the plaintiff the burden of proving that

defendants intended thereby to deceive and mislead. The true rule, as we interpret the law, is that when the party charging false and fraudulent representations has shown that the representations were made, and that they were false, and known to be false by the party making them, the intent to deceive is implied or presumed. Speaking on this subject, it has been said: " The simplest form in which the question of the. sufficiency of proof arises is where the proof is that the representation was false to the defendant's knowledge. ·The scienter as well as the falsehood being proved, proof of the fraudulent intent is regarded as conclusive. Evidence that the defendant intended no fraud will not be received, and the jury will be instructed to find for the plaintiff, though they should be of the opinion that· the defendant was not instigated by a corrupt motive of gain for himself, or by a malicious motive of injury to the plaintiff." See, also, *Haven v. Neal,* 43 Minn. 315 (45 N. W. Rep. 612); *Johnson v. Wallower,* 18 Minn. 288 (Gil. 262); *Newlove v. Callaghan,* 86 Mich. 301 (49 N. W. Rep. 214); *Judd v. Weber,* 55 Conn. 267 (11 Atl. Rep. 40); *Flower v. Brumbach,* 131 Ill. 646 (23 N. E. Rep. 335); *Baldwin v. Marsh,* 6 Ind. App. 533 (33 N. E. Rep. 973); *Ley v. Ins. Co.,* 120 Iowa, 211; *Mitchell v. Moore,* 24 Iowa, 394; *Hubbard v. Weare,* 79 Iowa, 688; *Foster v. Charles,* 7 Bing. 105.

In *Case v. Ayers,* 65 Ill. 142, the trial court instructed the jury, substantially as was done in the present case, that to justify a verdict for plaintiff on a charge of false and fraudulent representations, it must be shown that the representations were false to the defendant's knowledge, " and that they were made by the defendant to deceive and defraud the plaintiff." This instruction was held erroneous because " nothing more was required to entitle plaintiff to recover than that defendants should have known the alleged false representations to be untrue." A very similar case is found in *Collins v. Denison,* 12 Metc. (Mass.) 549. There

the trial court instructed the jury that it was not enough
to prove that the representations were false when made,
" unless the plaintiff further showed that defendant made
those representations with intent of thereby inducing the
plaintiff to make the trade." Exceptions to this instruc-
tion were sustained because therefrom " the jury would nat-
urally understand that some independent and distinct evi-
dence upon that point was required." The language here
quoted from the Collins Case pointedly indicates the vice
of the instruction we are now considering. In view of the
repeated statement by the court in several different para-
graphs of the charge that plaintiff must show that the rep-
resentations were made with intent to deceive, the entire
omission from the charge of any instruction that the fraud-
ulent intent could be inferred or implied from the known
falsity of the representations could not fail to impress the
jury with the thought that proof of the making of false
representations with knowledge of their falsity was not
enough to establish the intent to deceive, but that such
intention must be shown by other independent and distinct
evidence. The authorities cited clearly support our con-
clusion. Indeed, any other rule would render fraud and
imposition practically impregnable against judicial proceed-
ings for redress to the injured party.

III. The court, on its own motion, submitted to the
jury a single special finding as follows: " Did the de-
fendants, or either of them, guarantee to the plaintiff that
4. SPECIAL IN-  there was 17,000 acres of land in the Texas
TERROGA-
TORIES.        ranch in controversy in this case ? " To which
interrogatory a negative answer was returned. To the sub-
mission of this finding, plaintiff excepted, and we think the
exception must be sustained. The plaintiff made no claim
in pleading or in evidence that defendants guaranteed the
quantity of land, and, so far as the defendants touched that
question upon the trial, they testified without dispute, that
they expressly refused to give any guaranty. The real issue

presented upon the last count of the petition was whether the defendants, without having given any express guaranty, had nevertheless made such representations and statements of fact that plaintiff had the right to rely upon them as a warranty or assurance that the area of the ranch was substantially greater than it in fact proved to be. The interrogatory was liable to mislead the jury into the idea that the express refusal of the defendants to guarantee the land was decisive against the plaintiff's right to recover at all. If it be said that the interrogatory can be construed as an inquiry whether any representations or assurances amounting to a warranty were made by the defendants, it is a sufficient answer to say that, if this be true, it but demonstrates that the interrogatory was ambiguous, and being ambiguous, was misleading. Moreover, if the interrogatory is to be given the meaning last suggested, it is open to the objection that it does not call for a finding upon a particular fact, but rather for a conclusion in the nature of a conclusion of law to be derived from several facts, and is objectionable on this account. *Thomas v. Schee,* 80 Iowa, 237; *Home Insurance Co. v. Packet Co.,* 32 Iowa, 246; *O'Leary v. Ins. Co.,* 100 Iowa, 399.

IV.. It is urged in argument on the part of appellees that there was no evidence before the jury on which a verdict for plaintiff could have been sustained, and that errors,

5. FALSE REPRE-
SENTATIONS:
evidence.

if any, appearing in the record, are therefore without prejudice, and afford no ground for reversal. With this contention we are unable to agree. That defendants did represent the ranch as containing about 17,000 acres of land, there can be no manner of doubt. The agent who negotiated the exchange, and was a witness for the defendants, says he was present at the first meeting of the parties, and that the " amount of land talked of " was 17,000 acres.' The defendant B. F. Henry testifies that he told plaintiff there was about 17,000 acres. The defendant L. W. Conover admits that at his first inter-

view with plaintiff he made to him the same statement. In a letter to the broker, Conover writes, "There are about 17,000 acres." On cross-examination he says, "I made the statement to Mr. Boddy that there was 17,000 acres for the purpose of giving him to understand that there was that many acres in the land." The defendants' first offer to plaintiff was taken down in writing in Henry's presence, and, being read to him, received his assent. This memorandum described the ranch as "their land in Texas, 17,000 acres." The land was so described by them in public advertisements offering it for sale. Conover made a written memorandum for plaintiff of the assets of the corporation, again describing the land as 17,000 acres. It is true that defendants declared they would not guarantee the acreage, and referred him to their agent and manager, Butcher, as one who could tell him all about it. Plaintiff sought Butcher, and as we have already noted, received from him a showing which seemed to indicate that the ranch contained 17,334 acres. Plaintiff swears that on his way home he called on Henry and Conover, and told them the result of his interview with Butcher. In this he is corroborated by Conover. Taking the record as a whole it is entirely clear that a verdict finding the alleged representations were made by the defendants, and that plaintiff entered into the contract believing that he was obtaining stock representing an ownership of substantially 17,000 acres of land, would have abundant support in the testimony.

It is said, however, that, even if this be true, plaintiff cannot recover, because he did not rely upon the representations, but investigated the property for himself, and because the defendants distinctly refused to make any guaranty as to the number of acres. While the record shows that plaintiff went to look at the land before concluding the exchange, yet it is lacking in testimony that he undertook to investigate or satisfy himself as to the number of acres from any other source than de-

6. FALSE REPRE-
SENTATIONS:
reliance upon.

fendants themselves and their own agent, to whom he was directed by them. The rule of which the appellees here claim the benefit is not so broad as suggested. It is manifestly impracticable for any person, however experienced, to ride over or around a body of twenty-five or more square miles of land, surveyed in irregular tracts, and estimate with any reasonable degree of exactness its number of acres; and it is well settled that the buyer who examines land before purchasing may nevertheless rely upon the representations of the seller as to measurements. *Pringle v. Samuel,* 11 Ky. 43 (13 Am. Dec. 214), is an instructive case upon this point. The owner of a small farm contracted to convey it for the gross sum of $1,000. In a subsequent litigation between the parties the purchaser set up a claim that the seller had falsely represented the farm to contain fifty acres, when in fact it proved to contain a materially smaller quantity. It was shown that the purchaser saw the land before buying, and expressed a doubt as to the number of acres, but accepted the seller's word, and made the purchase. The seller contended, as is done here, that the purchaser, having looked at the land, was bound to protect himself, and could not be heard to say that he relied upon the representations made to him.

The opinion proceeds:

It is also contended that the maxim *caveat emptor* applies, and bars relief, and that the plaintiff was as much bound to ascertain the true quantity as the defendant, and that by admeasurement he could have discovered the truth of the fact, and for that reason he is not entitled to sustain his bill. We do not remember any case in which the maxim quoted has been used by the chancellor in such manner as to compel him to shut his ears against false representations, or to give latitude to the vendor of real estate to state facts untruly without any responsibility. The maxim will and ought to have more influence in the sale of real estate than that of a chattel. The former, from its nature, is open to a less precarious inspection as to quality, and, from its perma-

nent character, cannot hide many defects which may be concealed in a chattel. For instance, misrepresentations of its fertility and productions, or even the validity of its title, may be more easily detected; but the quantity requires greater skill and a larger proportion of science than even in this age is acquired by a majority of men. Almost every man may be capable of deciding on the quality of land, while but few can ascertain its quantity with accuracy. This is ascertained by a surveyor and a mathematical instrument, and his decision determines the quantity expressed in most of our title papers. In this matter, therefore, especially when the title papers, as in this case, are silent, each vendor ought to be bound to speak truly.

See, also, 2 Mechem, Sales, section 938; 2 Warvelle, Vendors, section 952; *McGibbons v. Wilder*, 78 Iowa, 531. Nor is this rule peculiar to suits in equity. In *Starkweather v. Benjamin*, 32 Mich. 305, the plaintiff brought an action at law to recover damages for false representations made by defendant as to the number of acres in a tract of land conveyed by the latter to the former. We quote from the opinion written by Campbell, J., as follows:

The defense rested mainly on the ground that the purchaser saw the land and was as able to judge of its size as Starkweather. We do not think the doctrine that, where both parties have equal means of judging, there is no fraud, applies to such a case. The maxim is equally valid that one who dissuades another from inquiry, and deceives him to his prejudice, is responsible. It cannot be generally true that persons can judge of the contents of a parcel of land by the eye. When an approach to accuracy is needed, there must be measurement. When a positive assurance of the area of a parcel of land is made by the vendor to the vendee, with the design of making the vendee believe it, that assurance is very material, and equivalent to an assurance of measurement.

The rule of the case here cited is especially applicable to facts like those at bar, where the buyer is referred for information to the seller's own agent, who answers the in-

quiry in a manner to confirm and strengthen the buyer's confidence in the truth of the representations made by the principal. Plaintiff could not have measured and ascertained the quantity of these lands with any degree of certainty without much time and expense, and we think there is no principle of law or equity which required him to rely upon the defendants' representations at his peril.

Whether the representations were false and fraudulently made, and whether plaintiff believed and relied upon said representations, were questions for the jury, and a misdirection by the trial court in respect thereto

7. LIABILITY FOR
FALSE REPRE-
SENTATIONS.

was necessarily prejudicial. This result is in no manner obviated by the fact that defendants refused to give any express guarantee as to quantity of land. A refusal to warrant or guarantee the quantity or quality of property sold is not inconsistent with liability for false representations. *Haight v. Hayt,* 19 N. Y. 464. In the cited case the plaintiff purchased land at an assignee's sale. At the time and place of sale a third party was present and claimed to have a mortgage lien upon the property. The assignee expressly refused to warrant or guarantee the title against the claim thus made, but falsely stated to the bidders that the claim was worthless and that no such mortgage existed. Relying on this assurance, the plaintiff purchased the land, and the mortgage was afterward established against it. Action was thereupon brought to recover damages. On trial the court refused an instruction asked by the defendants to the effect that, if the assignee refused to warrant the title against the mortgage, the plaintiff must be held to have purchased at his own risk. On appeal this ruling was affirmed. The court, by Grover, J., says:

Upon what principle the refusal of Hayt to warrant against the claim of Delevan, the existence of which he denied, is to protect him, if the denial was made with a design to deceive and defraud the purchasers, is not perceived. * * * The refusal of Hayt to warrant against the claim did not prove that plaintiffs knew of, or believed

that it existed. The question was whether they were deceived by Hayt's representation. If they believed that Delevan's claim was valid, they were not deceived, and could not recover. The refusal of Hayt to warrant was proper evidence for the consideration of the jury upon this point, but did not constitute a legal bar to the action.

A refusal to warrant, or a request that the buyer go and examine the property for himself, may sometimes serve to increase the misleading effect of a false representation. *Webster v. Bailey,* 31 Mich. 36; *Rood v. Chapin,* Walker's Ch. (Mich.) 79.

It is true that defendants, in stating the quantity of land, are shown in most instances to have qualified the figures given by them by the word "about"; the expression commonly used being, "About 17,000 acres." 

**8. Qualified statement as to quantity.** We think this qualification cannot have the effect to defeat plaintiff's right of recovery, if in fact the ranch contained materially less than 17,000 acres, and defendants, with knowledge of the shortage, made these statements to the plaintiff to induce him to believe that there were substantially 17,000 acres, and plaintiff, relying upon such representations, entered into the contract. It is something like the question which has frequently arisen upon the meaning and effect of the words "more or less," which are very commonly appended to the expressed or nominal area of lands stated in deeds of conveyance. Such expressions constitute a recognition of the fact that measurements of land, even by skilled persons, are apt to differ, and that men of intelligence and experience, who are familiar with the premises, may not agree in their estimates; and parties who purchase land in bulk, or as containing an estimated number of acres, can ordinarily obtain no relief on account of any shortage which subsequent accurate measurement may disclose. But the introduction of the words "more or less" or "about" or "estimated," in a conveyance or contract for conveyance, does not afford a shield against

liability for false representations, and the mere fact that a deficiency is very large in proportion to the supposed quantity is often treated as in itself evidence of fraud or of mutual mistake. In such case the purchaser may obtain relief in equity by rescission, or by abatement from the purchase price, or, if the purchase price has been paid, and especially if, by reason of any act on part of the grantor, rescission has been made impracticable, he may have his action at law for damages. *Paine v. Upton,* 87 N. Y. 327 (41 Am. Rep. 371) ; *Lewis v. Hoeldtke* (Tex. Civ. App.), 76 S. W. Rep. 309 ; *Couse v. Boyles,* 4 N. J. Eq. 212 (38 Am. Dec. 514) ; *Harrell v. Hill,* 19 Ark. 102 (68 Am. Dec. 202) ; *Triplett v. Alden,* 26 Grat. 721 (21 Am. Rep. 320) ; *Hoback v. Kilgores,* 26 Grat. 442 (21 Am. Rep. 317) ; *Camp v. Norfleet's Adm'x,* 83 Va. 380 (5 S. E. Rep. 374) *Fiske v. Fleming's Syndic,* 15 La. 202; *Estes v. Odom,* 91 Ga. 600 (18 S. E. Rep. 355) ; *Anthony v. Oldacre,* (Va.) 4 Call, 489; *Cravens v. Kiser,* 4 Ind. 512; *Blessing's Case,* (Va.) 1 Rob. 287; *Crislip v. Cain,* 19 W. Va. 438; *Wilson v. Randall,* 67 N. Y. 338; *McCandless v. Young,* 96 Pa. 289; *Baltimore v. Smith,* 54 Md. 187 (39 Am. Rep. 374) ; *Hosleton v. Dickinson,* 51 Iowa, 244. *Anthony v. Oldacre, supra,* affords an early example in this country of the application of the principle stated. Anthony sold the land as " supposed to contain 300 acres more or less as he bought it," but refused to guarantee the quantity ; declaring that, as he bought it without measurement, he would sell it in the same way. It was proven that after making his purchase, and before the sale by him, he had discovered the tract contained much less than 300 acres, which fact he did not disclose to his vendee. This was held to be such fraud as would entitle the vendee to compensation. In *Baltimore, etc., v. Smith, supra,* the contract called for a sale of a tract containing " about 65 acres," but it was found to contain less than 40 acres. The court says: " But what is the force and effect of the qualifying words.

Does it import that quantity was not a material part of the contract? And can the court so declare as a conclusion of law? We think not. · The force of the qualifying word, we think, is simply that, while the parties do not bind themselves to the precise quantity of 65 acres, it imports that the actual quantity is a near approximation to that mentioned.".

It follows from these considerations, as we have already suggested, that the record before us makes no such clear and undisputed case for the defense that this court can say, as a matter of law, that the errors complained of were without prejudice.

V. Complaint is also made of the instructions as a whole, and of rulings which we do not here specifically recite upon the admission of evidence, but we shall not discuss them. In many instances the exceptions are not well taken, while others involve questions not likely to arise upon a retrial. It is to be said of the instructions as a whole that the trial court, in its commendable anxiety to avoid error in omitting any element needed for a proper explanation of the rules to be observed by the jury, went perhaps to the other extreme, and involved the issue in some. obscurity by an unnecessary fullness and repetition of statement, but we think there was no error in this respect which would call for a reversal.

The fact that the Texas land was held by a corporation, and that the exchange with plaintiff was affected by a transfer to him of the capital stock of the corporation, instead of by a conveyance of the land itself, has been the occasion of considerable confusion in the statements and arguments of counsel on both sides; but the difficulty thus arising pertains to the terms employed, rather than to the essence of the discussion. Speaking generally, the defendants were the corporation, the ranch was its sole asset, a transfer of the capital stock was in fact a transfer of the ranch, and whatever served to increase or decrease the value of the land increased or decreased the value of the stock in precisely the

9. TRANSFER OF LAND: fraud; damages.

same ratio.    True, the title has remained in the Clay County Land & Cattle Company at all times, but in the form of its representative — the capital stock — the ownership has passed from the defendants to plaintiff.    Hence it is that representations as to the extent or quantity of the land have the same materiality which they would possess had they been made pending a transfer of the title by ordinary deed.

.For the reasons stated, a new trial must be ordered, and the judgment appealed from is *reversed.*