I. H. BILLICK, Appellee, v. H. W. DAVIDSON, Appellant.

**WITNESSES:** Competency—Measuring Land Without Knowledge
1 of Corners, Etc. Witnesses who are without any approximate
knowledge of the accuracy of the corners and lines of a govern-
mental subdivision of land, are wholly incompetent to testify
to the result of measurements of such land.

**EVIDENCE:** Relevancy, Materiality and Competency—Acreage.
2 The acreage of a tract of land is manifestly not shown by tes-
timony that a tenant resided thereon, and is paying a certain
rental for a certain number of acres.

**DAMAGES:** Measure of Damages—Deficiency in Land Bought—
3 Fraudulent Representations. The measure of damages for de-
ficiency in land bought, and for fraudulent representations as
to its quality, is twofold, to wit:
     1. A sum equal to the amount paid for the land which was
not received; and
     2. A sum equal to the difference, at the time of the convey-
ance, between the actual value of the land *which was actually
received*, and the value of *such* land had it been as represented.

*Appeal from Poweshiek District Court.*—HENRY SILWOLD,
Judge.

MONDAY, MAY 14, 1917.

ACTION to recover damages for alleged fraud and mis-
representation in exchange of properties. Judgment for
plaintiff in the court below. Defendant appeals.—*Reversed
and Remanded.*

*U. M. Reed* and *J. H. Patton,* for appellant.

*Bray, Shifflett & Wilkie,* for appellee.

GAYNOR, C. J.—Plaintiff was the owner
1. WITNESSES: of a house and lot in the city of Des Moines.
competency:
measuring land Defendant owned some acreage property on
without know-
ledge of cor- the bottoms along the river, south. Plaintiff
ners. etc.
valued his house and lot at $5,000. Defend-

ant placed a value of $6,000 on his acreage property. They exchanged. Plaintiff made a warranty deed to the defendant for the house and lot. Defendant conveyed to the plaintiff his acreage property. Plaintiff gave his note to the defendant for the difference, and secured the note by a mortgage upon the acreage property. Both parties lived in the town of Brooklyn, Iowa. Plaintiff had never seen the acreage property. Defendant represented to plaintiff that it contained 34 acres, and made other representations as to its location, desirability and the improvements on it. Plaintiff brings this action to recover damages, alleging that defendant falsely and fraudulently represented that there were 34 acres in this acreage tract; that, in fact, there was much less. The contention of the plaintiff is that there were not to exceed 17 acres, and that in other respects the land was not as represented. The cause was tried to a jury, and a verdict returned for the plaintiff. Defendant appeals.

Defendant's property was described as follows:

"Lot 5 in Section 22, Township 78 North, Range 23 West 5th P. M., being all of that part of the NW ¼ of the SE ¼ of Section 22, lying south of the Des Moines River."

The number of acres in this Lot 5 is capable of definite ascertainment. It has lines which segregated it from all other lands and made it a distinct entity, known as Lot 5. Its lines were its territorial limitations, and within these lines the acreage must be found. The lines were capable of definite ascertainment, and actual measurement within the lines reveals the number of acres. Several witnesses were called for the plaintiff, who, on cross-examination, demonstrated that they did not know the corners or lines; did not know the boundaries of this tract. They made measurements with a tape line. They chose points to start measurements without knowing whether these points

were within or without the lines of the lot.  One of the witnesses was asked these questions:

"Do you know where Lot 5 in controversy is situated, in fact?  A.  No, I don't know exactly where it is at.  Q. Do you know whether or not the fences on the land constitute the lines?  A.  I couldn't swear that was exactly right, but I could swear they are where it is supposed to be.  Q. So far as you know, the fences on the different sides of the land do not mark the boundary lines of Government Lot 5, do they?  A.  Well, I don't know.  I didn't have any pasture there at any time since I have been there.  The 15 acres were all under cultivation.  Q.  Then you don't know about having found a government corner with reference to this Lot 5, except what Mr. Gootz told you?  A.  Yes, that is all I know.  He told me he helped put it there.  We measured from that stone to the river.  (The stone referred to was the one said by Mr. Gootz to be the corner.)  Just measured that one distance on the south.  Got that 510 feet about the center of the farm.  We measured first at the north end, starting from what was supposed to be the corner.  There was just a corner post, a fence post, to mark the corner.  Nobody told me that it was the corner of Government Lot 5.  I measured from there to the river, to the water's edge.  The water was not high at that time.  We didn't go down the embankment.  We measured until I could come straight with the water's edge to where the bank was straight up and down at that time.  We went from the north end to the center—started on the west line of this farm, from the west fence, that was supposed to be the line.  Q.  Do you know whether or not that fence at the west side where you started was, in fact, the west line?  A. Oh, I wouldn't swear I knew it, but I think it was.  We then measured from there east to the river, then we went to the south side, started at the southwest corner, supposed to be a corner stone, and measured straight east to the river.

Found 1,038 feet on the south side. That is all I know about the acreage."

These figures made from this kind of measurement were put on a piece of paper and introduced in evidence as a basis by which the jury might ascertain the number of acres in the tract. Plaintiff on the witness stand was permitted to say that this witness had measured the land, and from his measurement, the lot contained but 17 acres and a fraction. It appears that this witness was in company with the plaintiff at the time this measurement was made. The plaintiff testified that he and Mr. Warren, the witness whose testimony is hereinbefore set out, measured it, and that it contained 17 acres and a fraction. Plaintiff testified that he knew nothing about the lines or corners, except what somebody told him; that they started their measurements from the fence corner; that that was all that there was to start from; that they didn't try to find out the government lines or corners—just took the fence to be the corner. Didn't know whether the fence was on the true line or not. He was asked these questions:

"You didn't know where any of the corners were? A. I know where the corners they told me were, and that is all I know about it. Didn't go to the records to find out where the corners are. Didn't have any surveyor to show me the corners. Q. So you don't know whether you surveyed Government Lot 5 in that quarter section or not? A. I couldn't say only what they said was that. The northeast corner of Lot 5 would have been out in the river, maybe on the other side of the river, I don't know how far. I didn't find out. The southeast corner of the lot must have been in the river, too. I didn't find it for the government corner of that quarter section. The southeast corner of the lot was a little west of the house. I couldn't say exactly whether I saw the southwest corner or not. Where the fences came was supposed to be the corner, I should think.

The acreage of the lot that was described in that deed was about 17 acres. I measured the land they said was mine. I supposed I measured the land described in the deed. I was getting the land south of the Des Moines River. South of the river was what I measured, or west of the river. There may be a little land south of the river, but precious little. The river is mostly on the east side. I measured the land that the tenant said was what Davidson rented to him. Q. As a matter of fact, you don't know where any of the government boundaries of Lot 5 are, do you? A. If a man would be farming here, he would take what is inside of the fences. Q. You cannot tell? A. No, no more than anybody else can about a farm here. Warren (the man who occupied it under the defendant) told me there were about 17 acres. It looked to me like there was nearer 17 acres than 34; might have been a little less, and might have been a little more than 17. I have forgotten just exactly what the measurements were, but there were about 17½ acres. Q. That is all the measuring that there was? You didn't measure it north and south at all? A. Supposed to be 80 rods. Q. Well, that is just your supposition? A. Yes, sir. Q. You never measured it? A. Warren said it was 80 rods. Q. And you determined then the number of acres in that field or tract of land by measuring the two ends and not measuring across—is that right? A. We knew it was 80 rods one way. Q. Do you know that to be true? A. If it was short, we took it for 80 rods anyway. Q. And if it was long, you took it for 80 rods anyway? A. Yes, sir."

The testimony as to the number of acres, in this tract, based on this measurement, defendant moved to strike out, for the reason that the witnesses had not shown themselves competent to give a statement as to the number of acres. It is apparent that this testimony was mere guess, mere speculation on a matter that was susceptible of accurate demonstration by proper measuring. There was error in

the admission of this kind of testimony. Jurors cannot be permitted to determine a substantive fact upon testimony that has its foundation on such an unsubstantial basis, and for this reason the case must be reversed.

We have not attempted to set out all the evidence on this question, but sufficient to indicate that witnesses were permitted to testify as to the actual number of acres in this lot, based on not even approximately definite information as to the lines and boundaries that segregated the land from other lands. The acreage must be found within the lines of this lot. To ascertain the number of acres by measurement, lines and boundaries of the lot must first be ascertained. It then becomes a matter of mathematical calculation. Without a knowledge of the lines, no measurement can serve as a basis for this mathematical calculation. There is no proof that the fences were upon the lines. There is no proof that the entire lot was fenced in. There is, in fact, no basis as to the estimate made by these witnesses as to the number of acres of land actually within the territorial limits of this tract. The court should not have permitted the jury to consider this evidence as a basis for computing the number of acres within the limits of the lot, and in this, the court was in error, and for this error, the case must be reversed.

2. EVIDENCE: relevancy, materiality and competency; acreage.

There was, however, other evidence given by the tenant who occupied the premises, to the effect that he paid $7 an acre to the defendant for the use of this property, and that he paid for about 15 acres at this rate, but it does not appear that he paid for more than was under cultivation within the limits of the lot; more than he actually cultivated within those limits. Even the tenant does not pretend to know the territorial limits. This is as vague and uncertain a basis for estimating the number of acres actually within the limits of the lot as is the other testimony to which we have adverted. The burden is on the

plaintiff to show, not only that the acreage was short, but the number of acres actually within the established lines and boundaries of the lot. Without proof of this, the proper foundation for estimating plaintiff's loss is not laid. For this reason, the case must be, and is, reversed.

In view of another trial, it is well for

3. DAMAGES:
measure of
damages: de-
ficiency in
land bought:
fraudulent rep-
resentations.

us to say that all rules for the admeasurement of actual damages are based upon the idea of compensation for the loss actually sustained, and the burden is on the plaintiff to show affirmatively a basis for estimating that loss. The defendant admits that he told the plaintiff there were 34 acres in this lot; admits that it is his opinion that there was not that number of acres; but makes no concession as to the actual number of acres contained in the lot. The duty, therefore, devolved upon the plaintiff to show the number of acres actually within the lot, as a basis for estimating his loss. It is apparent that land not within the boundary lines of this lot was not the subject of contract between these parties. All that plaintiff got must be found within the territorial limits of the lot. If there are less than 34 acres, then whatever there is less than that, plaintiff paid for, but did not receive. He is entitled, therefore, in estimating his damages, to have returned to him a sum equal to the compensation which he made to the defendant for the land not delivered, not within the territorial limits of the land conveyed. This case involves a deficiency in the acreage within the boundaries of the tract actually conveyed. To illustrate: If, as contended by the plaintiff, the defendant agreed to convey 34 acres, and plaintiff paid for 34 acres and received but 17 acres,—assuming the land to be all of the character of the land conveyed,—the plaintiff would have paid to the defendant just twice as much as he should have paid, and therefore would be entitled to have returned to him, as compensation for the loss of the land

not conveyed, one half of the price actually paid for the acreage represented and thought to have been conveyed. Thus, if plaintiff paid $5,000 for 34 acres and received but 17 acres, he paid $2,500 too much, and this sum should be returned to him. However, in estimating the amount that should be returned, it will be the duty of the jury to ascertain the amount actually paid by the plaintiff on the basis of 34 acres, and deduct from that amount the shortage, figured on the basis of the amount actually paid for the estimated tract. This would be one element of damage for which the plaintiff would be entitled to recover, provided plaintiff establishes the fraud charged, there being no charge of breach of contract. If the amount actually conveyed is not as represented, and a basis is laid for recovery at all, the plaintiff would be entitled to recover an added sum representing the difference between the actual value of the number of acres actually conveyed, and what that number of acres would be actually worth, had it been as represented. This would be a fair measure of compensation to the plaintiff for the loss actually sustained, to wit, the loss of the land which was not conveyed, estimated on the basis of the sum actually paid for the entire tract if it had contained the number of acres represented, with the added sum representing the difference between the actual value of the land actually conveyed, if it had been as represented, and the actual value of the land in the condition in which it was at the time it was conveyed to the plaintiff. The fair market value is presumably the actual value.

As sustaining this view, see *Boddy v. Henry,* 126 Iowa 31, and cases therein cited; *Hosleton v. Dickinson,* 51 Iowa 244; *Yost v. Mallicote's Admr.,* 77 Va. 610; *Anthony v. Oldacre,* 4 Call (Va.) 489; *Couse v. Boyles,* (N. J.) 38 Am. Dec. 514; *Triplett v. Allen,* 26 Gratt. (Va.) 721 (21 Am. Rep. 320); *Hoback v. Kilgore,* (Va.) 21 Am. Rep. 317; *Camp v.*

*Norfleet's Admx.,* (Va.) 5 S. E. 374; *Paine v. Upton,* 87 N. Y. 327 (41 Am. Rep. 371).

For the reasons pointed out, the case is reversed and remanded for retrial.—*Reversed and Remanded.*

Ladd, Evans and Salinger, JJ., concur.