J. S. FISHER, Appellant, v. TRUMBAUER & SMITH, CHARLES A. TRUMBAUER and L. H. SMITH.

**Real property:** EXCHANGE: DEFICIENCY IN ACREAGE: LIABILITY. Where a contract for an exchange of land clearly shows that the same was exchanged at an estimated value per acre, and not at a gross valuation, the grantor is liable for a material deficiency in quantity.

**Same:** DEFICIENCY IN ACREAGE: "MORE OR LESS." The words "more or less according to government survey," as applied to the quantity of land conveyed, are only intended to cover slight and unimportant inaccuracies; such as are incident to different measurements and the variation in different instruments.

**Same:** MEASURE OF RECOVERY. Where the valuation placed upon land for the purpose of an exchange was a mere trading price, recovery for deficiency in the acreage should be based upon its actual value rather than the value at which it was traded.

**Trial:** FORUM: WAIVER OF OBJECTION: EQUITABLE JURISDICTION. Where no grounds for equitable relief are alleged in the petition and defendant fails to move to transfer the cause to the law side of the calendar before answering, objection to a trial in equity is waived. And where the petition states an equitable cause of action the defendant is not entitled to a trial at law upon a counterclaim; and even though equitable relief could not be granted, for some cause other than a failure of proof, equity will retain jurisdiction and dispose of the case on its merits, though awarding some relief peculiar to a law action.

**Same:** TRANSFER OF CAUSE: DISMISSAL. Where plaintiff pleaded an equitable cause of action to which defendant filed a counterclaim at law, and plaintiff failed to show himself entitled to equitable relief but did prove a cause of action at law, a dismissal of the action was improper; the correct practice being either to award the plaintiff the relief he was entitled to, or to transfer the cause to the law calendar for trial.

**Appeal:** ASSIGNMENT OF ERRORS. Assignment of error on appeal is no longer necessary; all that is required is a particular statement of the errors relied upon, and the citation of authorities to support the complaint, or the reasons for challenging the rulings.

**Real property:** EXCHANGE: MUTUAL MISTAKE: EQUITABLE JURISDIC- TION. Where the parties to a conveyance of real property were mutually mistaken as to the number of acres in the tract, the injured party may bring his action either in law or in equity; and having brought his action in equity he is entitled to a hearing on the merits, even though he asked a reformation of the deed, to which he was not entitled; and any legal defense or counterclaim interposed by defendant must be heard in that forum.

**Same:** FRAUD: EVIDENCE. Where a party exchanging real property for merchandise had full opportunity to inspect and examine the goods, the mere fact that some of the articles were not in the stock

and that others were defective, will not justify a finding of intentional misrepresentation of the stock by the owner.

*Appeal from Washington District Court.*—HON. K. E. WILLCOCKSON, Judge.

WEDNESDAY, NOVEMBER 20, 1912.

ACTION in equity to reform deed and recover for shortage in acreage. There was a counterclaim. On hearing, both petition and counterclaim were dismissed without prejudice to the beginning or maintenance of an action on either at law. The plaintiff appeals.—*Reversed.*

*Edmund D. Morrison,* for appellant.

*Eicher & Livingston,* for appellees.

LADD, J.—On February 10, 1909, plaintiff entered into a written contract with Trumbauer & Smith, a copartnership composed of Charles A. Trumbauer and L. H. Smith, whereby he undertook to exchange a stock of hardware and implements located in Wellman for "their farm of two hundred acres located in Jackson county, Iowa, three miles north of Maquoketa . . . to be taken at $60.00 per acre or $12,-000.00," and "the entire stock to be taken at its original invoice price, and where invoice cannot be shown, same to be taken at present wholesale price. All furniture and fixtures, consisting of shelving, tinners' tools, plumbers' tools, pump tools, pump wagon, cash register, show cases, counters, chairs, desk, two stoves, and all other tools and fixtures now used in connection with the business, to be taken at the lump and fixed price of $1,825.00." The contract was made subject to approval on examination of the land, and shortly afterwards the plaintiff examined the farm, which resulted in a supplemental agreement wherein the defendants agree "to

reduce the price of the farm $250.'' The invoice was taken and the defendants executed to plaintiff their note for $511.38, being the difference between the stipulated price of the farm, less incumbrance, and the stock of goods and fixtures according to the invoice. The plaintiff executed a bill of sale for the stock of goods in pursuance of the contract, and the defendants conveyed the land to plaintiff by deed containing the ordinary covenants of warranty, and following the description these words, ''two hundred acres more or less according to government survey.'' Some months later plaintiff discovered that the farm contained only 191.42 acres, and on October 22, 1909, this suit in equity was begun to reform the deed by striking therefrom the words above quoted, on the ground that the acreage had been fraudulently misrepresented, and that said words were fraudulently inserted. In the second count of the petition it was alleged that there was a mutual mistake whereby each party supposed there were two hundred acres in the farm, when, in fact, it contained eight and fifty-eight-hundredths acres less. The prayer was that the deed be reformed and judgment be entered against the defendants for $700 and interest. On January 10, 1911, the defendants filed an amended and substituted answer, putting in issue the allegations of the petition, and pleading by way of counterclaim concealment and misrepresentation as to certain implements being complete and the contents of certain packages of goods which were not opened, and also alleging false representation as to the value of fixtures and the like included at the fixed valuation of $1,825. The defendants prayed that plaintiff's petition be dismissed, and that they have judgment on the counterclaim in the sum of $1,800.

On the same day the defendants moved the court to ''separate the issues and causes of action, and set that portion of the plaintiff's allegations and demands for the reformation of the deed on the equity docket, and that portion of the allegations and demands for a recovery of damages on

the law docket, and for an order that the same be separately tried.'' This motion was overruled, and on January 14th following the defendants moved that the suit be transferred to the law side of the calendar. This motion also was overruled. On hearing it appeared that there were only one hundred and ninety-one and forty-two-hundredths acres in the farm conveyed to plaintiff; that neither party knew of the shortage until discovered by plaintiff in disposing of it to another; that defendants supposed that the farm contained two hundred acres; that both parties acted in good faith, the plaintiff in what he said of the stock of merchandise and defendants in what they said of the land; and that, if some parts of articles were lacking or broken, the value of some of these were not shown, and the only representation concerning the fixtures was what had been paid for them and this was proven true. The deed was prepared in accordance with the understanding of the parties. A case then was not made out for the reformation of the deed, as the court rightly decided, though the right to recover some damages was conclusively established. The price of the land was estimated by the acre.

In the original contract it was designated as ''their farm of two hundred acres,'' and was to be taken in at $60 per

1. REAL PROP-ERTY: exchange: deficiency in acreage: liability.

acre, or $12,000. This clearly indicates that it was exchanged at the estimated value per acre, and nothing in the supplemental contract wherein defendants ''agree to reduce the price of the farm $250'' obviates this conclusion.

Where the sale is by the acre, the differences presumed to have been contemplated by the insertion of the clause, ''more or less according to the government survey,'' are only

2. SAME: deficiency in acreage ''more or less.''

such as are due to the errors incident to measurement by different surveyors and the variation in the instruments used. They are words of safety or precaution merely, and intended to cover slight and unimportant inaccuracies. A discrepancy of eight and

fifty-eight-hundredths acres in two hundred acres is such a one as will be remedied by the allowance of damages. *Rathke v. Tyler,* 136 Iowa, 284.

The evidence as a whole, however, discloses that the price named in the contract was merely an estimate for trading purposes. Indeed, the plaintiff testified that the land was worth but $45 per acre, and the price of the fixtures, etc., was estimated at what they cost in the trade rather than their value. Moreover, the goods, though a "trading stock," were invoiced at original cost, or, when this was not ascertainable from the bills, at catalogue prices. In these circumstances the transaction is to be regarded as an exchange and the recovery had for the shortage on a *quantum meruit. Fagan v. Hook,* 134 Iowa, 381. The petition contained sufficient to make out a cause of action at law, and, as seen, the proof was such as to put in issue the amount owing because of the deficiency in the amount of land, and also what amount, if any, were recoverable on the counterclaim had the trial been at law. *Boddy v. Henry,* 126 Iowa, 31.

3. SAME: measure of recovery.

Had no grounds of equitable relief been alleged, relief might have been granted for by not moving "at or before" the filing of "the answer" to transfer the cause to the law side of the calendar. Defendants waived any error in the proceedings. Section 3434, Code; *Moore v. District Twp.,* 28 Iowa, 425; *Bibbins v. Clark,* 90 Iowa, 231; *Matthews v. Luers Drug Co.,* 110 Iowa, 231.

4. TRIAL: forum: waiver of objection: equitable jurisdiction.

And plaintiff's suit having been begun on the equity side, it might there be maintained and the defendants were not in a situation to insist on their counterclaim being heard on the law side of the calendar. *Ryman v. Lynch,* 76 Iowa, 587; *Wilkinson v. Pritchard,* 93 Iowa, 308; *Crissman v. McDuff,* 114 Iowa, 83; *Gatch v. Garretson,* 100 Iowa, 252. Or had the equities alleged in the petition been proven, and the relief "been denied on some other ground than for want.

of evidence as that it was impracticable or impossible, then the court might well have retained the cause and disposed of it on the merits, even though this might have resulted in awarding a remedy peculiar to law." *Richmond v. Railway,* 33 Iowa, 441, 489; *Clinton v. Shugart,* 126 Iowa, 179; *Johnson v. Carter,* 143 Iowa, 95, 120; *Reiger v. Turley,* 151 Iowa, 491.

The principle is well stated in the last-cited case as follows: "When equity has once obtained jurisdiction of a controversy, it will determine all questions material or necessary to the accomplishment of full and complete justice between the parties, even though in doing so it may require passing on some matters ordinarily cognizable at law."

But here the equities, though alleged, were not proven, and that was the ground for denying equitable relief. The practice in such a case, in the absence of statutory provisions to the contrary, is to dismiss the cause and relegate the parties to an action at law, as was done by the district court in this case. *Roberts v. Taliferro,* 7 Iowa, 110; *Cooper v. Armstrong,* 3 G. Greene, 120; *Conyngham v. Smith,* 16 Iowa, 471; *Mitchell v. Dowell,* 105 U. S. 430, (26 L. Ed. 1142); *Denny v. McCown,* 34 Or. 47, (54 Pac. 952); 10 Cyc. 111, and cases collected. But see Pomeroy's Code Remedies, section 20 *et seq.* As observed in *Corey v. Sherman,* 96 Iowa, 114: "It is contrary to the policy of the statutes of this state to dismiss an action or defeat a recovery on the mere ground that the plaintiff has erred in selecting the proceedings to obtain the relief to which he is entitled." Suits in equity and actions at law are heard and tried by the same tribunal, and section 3432 of the Code declares that "an error of the plaintiff as to the kind of proceedings adopted shall not cause the abatement or dismissal of the action, but merely a change into the proper proceedings, and a transfer to the proper docket."

5. SAME: transfer of causes: dismissal.

This obviates the dismissal of a suit in equity when the equities fail if enough is contained in the petition to make

out a cause of action at law, and there is sufficient evidence to sustain it. In other words, if there is enough in the record to warrant the entry of a judgment at law, it was error to enter a dismissal of the action. In doing so, the court must have overlooked this statute. The only courses open were either to award the relief to which plaintiff had shown himself entitled, or to order the cause transferred to the law side of the calendar, and that the issues be determined as at law. As the equities alleged had failed, none incidental thereto · might have been awarded, and, if a judgment at law might be entered in such a case, a party could be deprived of a trial at law, and incidentally denied the benefit of the guaranty of a trial by jury through the ingenuity of a pleader in so formulating the petition as to allege equities enough to retain the cause on the equity side of the calendar and include enough to make out a cause of action at law. In other words, the forms of pleadings, regardless of the proofs, would determine the forum and whether at law or in equity, would depend not so much upon the character of the cause of action as upon the purpose of the pleader in preparing the petition. If such were the rule, the defendant would be helpless, for a motion to transfer to the law calendar would be of no avail, and as equitable issues were raised, even though no equity were proven, the chancellor would administer the remedy. We are not ready to sanction such a practice, nor do we find anything in the Code authorizing it. Language may be found in *Green Bay Lumber Co. v. Miller*, 98 Iowa, 468, squinting that way, but the plaintiff was there found entitled to equitable relief. The distinction between cases where the equities have been established and those wherein these have failed does not appear to have been noted, and the same may be said of *Walters v. Farmers' Bank*, 76 Va. 12. This last decision was followed by *Evans v. Kelley*, 49 W. Va. 181, (38 S. E. 497), citing in support thereof cases wherein the equities have been established. No reasons are stated in support of the practice indorsed in these cases, and we

are inclined to adhere to the rule approved by the overwhelming weight of authority that when the equities of a petition fail for want of proof, and enough is contained therein to state a cause of action at law, relief ought not to be granted, but the cause transferred to the law side of the calendar and there tried.

It follows that the court erred in dismissing the action, and its order in so doing is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.—*Reversed.*

### Supplemental Opinion.

### TUESDAY, MAY 13, 1913.

PER CURIAM.—The opinion heretofore filed disposes of every point raised in the assignment of errors, but, as is contended in the petition for rehearing, the point that equity will grant relief where there is a mutual mistake concerning the quantity of land was raised in the brief. This is barely mentioned and an authority cited, but no argument made in its support. Indeed, in summing up, appellant says he "had no right to recover on his deed until reformed," but the rules do not exact that the argument shall be consistent with the brief points or even with itself. There is no longer any necessity of assigning errors, and about all that is exacted is that the particular error of which complaint is made be clearly stated and either authorities be cited in its support or the reasons for challenging the ruling be stated in argument. Had counsel given a little more attention to the rules of this court concerning the preparation of briefs, we might have experienced less difficulty in ascertaining what was being claimed.

6. APPEAL: assignment of errors.

There was a mutual mistake concerning the number of acres of land and the remedy available in such a case is

either at law or in equity as the injured party may elect.

7. REAL PROP-
ERTY: ex-
change: mu-
tual mistake:
equitable juris-
diction.

*Rathke v. Tyler*, 136 Iowa, 284; *Boddy v. Henry*, 126 Iowa, 31. The plaintiff then was entitled to a hearing in equity on the merits, even though he had prayed for the reformation of the deed, to which he was not entitled, and which in any event was of no consequence.

That the defense or counterclaim was at law would not authorize a trial in that forum, but, having been interposed in a suit properly begun in equity, these must also be there heard. See *Ryman v. Lynch*, 76 Iowa, 587, and like cases.

Taking up the cause on the merits, it is to be said that the contract was what is known in common parlance as a trading contract, and therefore the plaintiff should be allowed for the shortage a price per acre, not such as estimated for the purpose of exchange, but the actual value thereof. The plaintiff testified the farm was worth $45 per acre, and, as this, as near as can be ascertained from the record, is about what he paid for it in value, it should be allowed him as damages.

The defendants should not be allowed anything on their counterclaim for the reasons that although parts of some of the articles may not have been in the stock, and others may have been defective, the evidence was not such as to warrant a finding that there was any intentional misrepresentation.

8. SAME: fraud:
evidence.

Discrepancies of this kind according to the evidence are likely in every transfer of such a stock and from the mere fact that some parts were missing when defendants undertook to set up the different machines, or there were breaks in some of the articles when exhibited for sale, it ought not to be inferred that plaintiff in saying he thought all parts were there and no defects acted with a fraudulent purpose. Nothing was done to prevent those invoicing from making the fullest investigation, and these matters were not mentioned until suit had been commenced, and

we are of opinion that nothing should be allowed on the counterclaim. The record bears evidence of the entire good faith of both parties to the transaction, and only because of a mutual mistake without fault of either is judgment awarded against defendants for the amount stated with interest from the commencement of the action.

The cause is remanded for judgment accordingly. As so modified, the opinion is adhered to.—*Reversed.*