CHARLES J. FALLERS, Appellee, v. S. S. HUMMEL, Appellant.

BOUNDARIES: Acquiescence—Sufficiency of Evidence—Fact Ques-
1  tion. Evidence reviewed and held sufficient to show that a certain line, *though with a jog therein,* had been acquiesced in as a boundary line for more than ten years.

ACTION: Wrong Calendar—Failure of Defendant to Object—Waiver.
2  Improperly bringing an action in equity instead of at law is no ground for dismissal. If defendant does not like his location on the calendar he must say so, not after trial but before answer, by appropriate motion to transfer. Failing in this he waives any error in bringing the action on the wrong calendar. Pre-eminently is this true when defendant, instead of moving for a transfer, countered in his answer by a prayer for equitable relief for himself. (Sec. 3434, Code 1897.)

EQUITY: Jurisdiction Once Attaching, Retained for Full Settlement
3  of Controversy. Equity, having obtained jurisdiction of a controversy, will retain it and do full justice, even though in so doing it may pass on matters ordinarily cognizable at law.

INJUNCTION: Waste—Proper Action. An action in equity for in-
4  junction is a proper action to prevent the cutting down of trees, removing fences and destroying fixtures.

*Appeal from Fremont District Court.*—HON. E. B. WOOD-
RUFF, Judge.·

THURSDAY, APRIL 8, 1915.

THIS is an action in equity to establish a disputed division line and to quiet title to a strip of land in controversy based upon adverse possession and acquiescence. The controversy is over a division fence. Plaintiff alleges that he and defendant and their grantors have acquiesced in the line upon which is located a hedge and post and board fence as the true line for nearly forty years; that defendant has threatened to change the location of a part of the fence, which would appropriate a part of plaintiff's land and injure plaintiff's water reservoir built to the present line and his water system; that this would injure and destroy his trees, garden, stockyards and lot. Plaintiff asked an injunction in addition to the other equitable relief prayed. There was a trial to the court and a decree for plaintiff as prayed. Defendant appeals.— *Affirmed.*

*V. V. McIntosh* and *T. S. Stevens,* for appellant.

*William Eaton* and *Jennings & Mattox,* for appellee.

PRESTON, J.—There seems to be no controversy between counsel as to the law, both claiming that the case is ruled by *Miller v. Mills Co.,* 111 Iowa 654, and the question of fact is whether there has been such acquiescence as that the fence in question should be treated as the true line. Plaintiff owns the east half of the southwest quarter of the section, and defendant is the owner of the west half of the same quarter section. There is a jog in the fence about sixty rods from the south line. The plaintiff bought his land in 1895, and the defendant purchased his in 1901. The suit was brought in 1913. The fence has been located in the same place for many years, with the jog as at present. Part of the way the fence is board and posts, some wire; but for about twenty rods in the south part the fence is hedge trees, some of them six inches

1. BOUNDARIES: acquiescence: sufficiency of evidence: fact question.

in diameter at the base and varying from sixteen to eighteen feet in height, the others from two to four inches in diameter. The testimony tends to show that the hedge is thick and will turn stock. Witnesses testify that there is evidence at the north end of the hedge fence of its having at some time run through to the north end. About 1875, the hedge fence was growing on the present line. A plat was introduced in evidence, from which it appears that a river, or run, from the northwest to the southeast, crosses the division fence at about the place of the jog. We are unable to make out from the plat whether it is a river or a run; the writing is blurred. Plaintiff's house and yards are east and south of the jog in the fence.

The defendant's claim is that the line of the fence south of the jog is too far west and on defendant's land. Plaintiff has built a water reservoir south of the jog, the west end of which extends to the fence as it now stands. The water reservoir is connected by pipes with plaintiff's barn and stockyards. The reservoir is at the highest point; it is twelve feet deep and eight feet wide. An orchard of apple and plum trees was set out by plaintiff in 1895 between his house and the hedge. Some of the trees are on the disputed line.

The undisputed evidence is that the fence has been located as it is now for about thirty-eight years. The land on either side has been farmed by the parties to this suit and their grantors up to the fence. A part of the time, on one side, it was pastured. Many of the facts are undisputed.

A significant fact, and we think a strong circumstance against the contention of defendant, is that there was an agreement between plaintiff, after he bought the land, and the defendant's grantor that plaintiff should keep up the north half of the fence and the other party the south half. Since defendant bought his land, in 1901, he has maintained and kept in repair the south half of the fence, and in this half is the jog.

Plaintiff testifies that the hedge fence in the south half

has been trimmed once or twice by defendant; that he saw the land before he purchased of Pease, and that he saw the division fence and believed it was the division line; that he farmed to the fence and put on the improvements in good faith, believing the fence was the division line; that the fence is now just as it was when he bought the land.

Mr. Pease, plaintiff's grantor, owned the land two years; says that he and the party owning the Hummel tract farmed up to the fence during all the time he owned the land; that the division fence was there then as now; the hedge was ten to twelve feet high; that he didn't know whether the line was the correct line or not.

Another witness, Scott, testifies that he has known the Fallers and Hummel land thirty-seven years, and thinks the land was farmed up to the hedge ever since he knew it.

Another witness, Biggs, testifies that he has known the land for twenty years; that the land has been farmed up to the hedge in former years, but Hummel's has been in pasture for the last few years, but that it has been in grain, mostly in corn, up to the hedge. He says the jog in the fence has been there for twenty years or more.

Other witnesses for plaintiff gave similar testimony.

For defendant, witness Forney, a surveyor, says he did not find a government corner in the survey he made, but he made other measurements and located the line between the land of plaintiff and defendant, and that the fence south of the jog is west of the line. This survey was made in 1912. He says, however, that defendant's land is a little wider at the south end than the north end, but is short at both ends.

Mr. Johnson, who owned the Hummel tract in 1888, and for some years thereafter, says that one Gunnison occupied what is now the Fallers land, and that he gave Gunnison permission to move the fence to give the hogs room; that Gunnison was to move it back, but did not do so; this was the part of the fence north of the hedge toward the ditch; and that he and one Boreman talked about the fence, and

Boreman said it was not on the line, and that he talked to
plaintiff about it in 1897. A year or such a matter before
the suit was brought, there was some controversy between
plaintiff and defendant in regard to the matter.

Witness Cass testified that he knew the fence was not
on the line and that the fence was not regarded as the line.
But this witness is speaking of a time many years prior to
the time that plaintiff and defendant bought their lands. He
conveyed the Hummel land in 1882. He says, however,
that the hedge fence was put in in 1875, and just as it is now.

Witness Pease testified that when he owned the Fallers
land one Johnson owned the Hummel land, and that Johnson
spoke to him about the fence not being on the line; that he
knew the fence was not straight, but says he was not going
to change it (the hedge) himself. This witness is testifying
to the situation in 1895.

Plaintiff testifies in rebuttal that he had no knowledge
of the matters and conversations testified to by Johnson in
regard to Gunnison, Boreman and others; that he had no
talk with plaintiff or dispute about the line at any of the times
referred to by defendant. Counsel for defendant says that,
the jog in the fence being abrupt, no one could be misled into
thinking that the fence was the true line; but the jog in the
fence was just as apparent to the defendant, who was keeping
up this part as his share of the division fence, as to anyone
else.

We have not set out all the evidence. But we are satis-
fied that, even though defendant's contention may be true,
there was some controversy between prior owners of the land,
and there may not, perhaps, have been acquiescence as to
them. But defendant bought his land in 1895, and the only
step ever taken by defendant toward actually asserting own-
ership of the strip lying east of the hedge and its continu-
ance of the jog in the fence was when he started to set posts
and string wires thereon in the fore part of 1913. We are
satisfied from a reading of the record that there was acquies-

cence for more than ten years before the final controversy between the parties, a short time before the suit was brought. The equities are with the plaintiff, and, under the rule of the cases, there was acquiescence between plaintiff and defendant for more than ten years in the fence as the line between them.

2. Among other things in the answer, the defendant denied that plaintiff is entitled to equitable relief; avers that plaintiff has a speedy and adequate remedy at law; that there is no allegation in the petition or amendment that defendant is insolvent, or that the injury to plaintiff will be irreparable; and prays that plaintiff's petition be dismissed; that he have all proper equitable relief, and judgment for costs.

2. ACTION: wrong calendar: failure of defendant to object: waiver.

The argument on behalf of defendant on this point is that title to real estate cannot be tried by injunction; that the claim of the plaintiff was that he had been in adverse possession of the disputed land; that he had become the owner thereof, while defendant claims that it was a part of his original tract, and denies the adverse possession of plaintiff; that the court undertook to determine in an injunction suit the title to the disputed tract; and that the decree deprived the defendant of his substantial legal rights; and it is urged that because of these matters the cause did not present a matter for equitable jurisdiction.

If it be true, as contended by defendant, that plaintiff improperly brought the action in equity, this would not be a ground for dismissal. The statute, Sec. 3432, provides that an error of the plaintiff as to the kind of proceedings adopted shall not cause the abatement or dismissal of the action, but merely a change into the proper proceedings, and a transfer to the proper docket. Sec. 3434 provides that the defendant may have the correction made by motion at or before the filing of his answer, where it appears by the provision of the code wrong proceedings have been adopted. And it was held in

*Corey v. Sherman,* 96 Iowa 114, that the fact that plaintiff has a plain, speedy and adequate remedy at law will not deprive the court of jurisdiction in an equitable action. The remedy in such case is the transfer of the action to the law docket. See also *Fisher v. Trumbauer,* 160 Iowa 255.

The defendant made no motion to transfer to the law docket. We have quoted a part of the answer of defendant, and, as before set out, the defendant in the prayer of his answer asked that "he have all proper and equitable relief." The petition alleged that defendant had threatened to change the location of a part of the fence by removing the same and putting in a new fence east of the present fence; that this could not be done without appropriating the land of the plaintiff and crippling his water system  and injuring and destroying trees, garden, stockyards and lot; that defendant, in attempting to carry out said threat, has placed posts and wire upon the ground and commenced work upon the land of plaintiff for the purpose of building a fence, and, unless restrained, will carry out his threat and work irreparable injury to plaintiff; that plaintiff has no adequate remedy at law, and defendant will work a continuing nuisance to plaintiff's property. There was evidence to show that defendant had threatened to do the things alleged. He is now in this court as he was in the district court, claiming the right to do the things he had threatened to do. This is sufficient at this point as showing that such was his purpose. - *Bobzin v. Gould, etc.,* 140 Iowa 744.

The action was properly brought in equity to determine the dispute between the parties as to the division line and to settle the dispute as to the strip of land in controversy. The equities were proven. In such a case, equity, having obtained jurisdiction, will determine all questions material or necessary to the accomplishment of full and complete justice between the parties, even though in doing so it may require passing on some matters ordinarily cogniz-

3. EQUITY: jurisdiction once attaching, retained for full settlement of controversy.

able at law. *Fisher v. Trumbauer, supra,* at page 261, and cases.

Aside from this, we think an action in equity for an injunction will lie to prevent the defendant cutting down trees and hedge, removing the fence, and destruction of plaintiff's waterworks. We are of opinion that the decree of the district court was right, and it is—*Affirmed.*

**4. INJUNCTION: waste: proper action.**

DEEMER, C. J., EVANS and SALINGER, JJ., concur.