A. L. CAPPS et al., Appellees, v. MAMIE CLARK et al., Appellants.

**APPEAL AND ERROR:** Right of Review—Compliance with Judgment. A judgment defendant may not be held to have waived his right of appeal because of having performed the judgment, when his acts were nonvoluntary and with no intent to perform the judgment.

**VENDOR AND PURCHASER:** Rescission—Shortage in Acreage. An *executed* contract for the purchase of real estate at a specified price per acre may not be *rescinded* on the ground of a mutual mistake as to the acreage. An adjustment of the price on the basis of actual acreage will accord full equity to both parties.

*Appeal from Wapello District Court.*—C. W. VERMILION, Judge.

OCTOBER 16, 1923.

SUIT in equity, to rescind a contract of sale of land and the deed given pursuant thereto, because of a deficiency in the acreage. The contract was entered into on July 2, 1919, and fully executed by conveyance on March 1, 1920. The deficiency was discovered in September, 1921, and this suit was brought in February, 1922. The vendor was George Clark, who subsequently died, in June, 1920. The action is brought against his administrators and against his widow and only child. There was a decree for the plaintiff substantially as prayed, whereby the conveyance was canceled, and likewise the purchase money obligations of vendee. Judgment was also entered for the vendee, plaintiff, for the amount of the purchase price paid, and for the costs of improvements made and for taxes paid. The defendants have appealed.—*Modified and affirmed.*

*Roberts & Webber,* for appellants.

*Chester W. Whitmore,* for appellees.

EVANS, J.—The petition was predicated upon alleged false representations made to the plaintiff by Bert Miles, as agent for

the owner, George Clark. These were that the farm about to be purchased contained 237 acres, whereas, in fact, it contained, in actual measure, only 210 acres. The agency of Miles was denied by the defendants. No evidence was introduced to prove the allegation of agency. On the contrary, the evidence disclosed that both Miles and the plaintiff were employees of the John Morrell Packing Company, and were friends, and that both had the land fever in the year 1919, and that Miles lent his voluntary aid to the plaintiff to purchase the farm in question as cheaply as possible, having already bought a farm for himself. The contract of sale described the farm as follows:

"The said party of the first part hereby agrees to sell and convey to the party of the second part his farm, 237 acres, more or less, according to government survey, the above farm located in Columbia Township, Wapello County, Iowa, and shown on the atlas as the John McDonald farm. For the above described farm second party agrees to pay $187.50 per acre, making a total of $44,437.50 and to be paid as follows:"

An actual survey of the farm, made shortly before the trial, disclosed a deficiency of 27 acres. Clark was himself a comparatively recent purchaser of the farm. There is no proof that he knew of the existing deficiency, nor any proof that he knew that any representation had been made by Miles. It does appear that Miles and the plaintiff went to Clark's office together; that, prior to that time, they had examined the county map; that this disclosed the government survey of 237+ acres; and that they had the same map or "atlas" before them in Clark's office at the time the contract was entered into. The evidence presents no conflict, except so far as there may be inconsistency in some parts of plaintiff's evidence. No evidence was introduced for the defendant.

The trial court found that the plaintiff was entitled to relief as for a mutual mistake or innocent representation, in that the recitals of the contract indicated mutual understanding that the area of the farm contracted for was 237 acres. Decree of rescission was entered, as prayed by the plaintiff, which included many detailed provisions which were intended to restore the status quo.

I.  We are confronted at the outset with a motion by appel-

lee-to- dismiss and affirm, on the ground that, after decree, the defendants performed the same, and thereby waived the right of appeal.

It appears from the record that a note and mortgage were executed by the plaintiff to Clark for part of the purchase money, for $18,430. The decree in terms canceled this note and mortgage, and also directed the clerk of the dis-

**1. APPEAL AND ERROR: right of review: compliance with judgment.**

trict court to cancel the same and deliver them to the plaintiff. · The note and mortgage had been introduced in evidence, and were a part of the record as exhibits. After the decree, the attorneys for defendants received from the clerk, and receipted to him for, the files in the case, including the exhibits. Sometime later, they were called by phone by the clerk, and directed to return the exhibits to his office, in order that he might make the proper cancellation required by the decree. This request or direction by the clerk was complied with by the attorneys, and the exhibits were sent by messenger to the clerk's office; whereupon the clerk entered upon the face of the note a formal cancellation, as directed by the decree.

The point made by appellee in his motion is that, inasmuch as the attorneys for defendants returned the exhibits in compliance with his demand, knowing that they were demanded for the purpose of noting the cancellation thereon, it amounted to a performance of the decree on the part of the attorneys. The point is not well taken. There was nothing in the action of the attorneys that indicated an intent to perform the decree. As between the parties, the decree itself was wholly effective to cancel both note and mortgage. The formal notation of the cancellation upon the face of the paper added nothing to the effectiveness of the decree, and was quite supererogatory. The defendants had filed a cross bill of foreclosure of this note and mortgage, and the decree had gone against them. This was final and conclusive, in the absence of appeal. The fear that said note and mortgage might pass into innocent hands had no foundation, because they were tied up as a part of the record in the case, where the adjudication was had. Nevertheless, if the defendants had voluntarily, after decree, entered a form of cancellation upon the papers, it may be that such an act could be

construed as a performance of the decree. But this was not done. The fact that counsel returned the files to the clerk's office upon request cannot be construed as a performance of the decree or as a waiver of right of appeal. The legal custody of the papers was in the clerk. The possession of counsel for defendants was temporary, and permissive only. They had no right to retain them for a moment after their return was called for by the proper authority. The very fact that the clerk was proceeding to make such notation, and did make the same, implied the refusal of the defendants to perform. Appellee relies for a precedent upon *Evans v. Noble* (Iowa), 107 N. W. 1105 (not officially reported), and contends that such case is controlling. We do not find it so. In that case, the appellant himself performed the act which the court had required of him as a condition precedent to relief. He performed such condition, and afterward appealed. The motion to dismiss and affirm is accordingly overruled.

II. Going to the merits of the case, does the record disclose a sufficient representation or mutual mistake to entitle plaintiff to equitable relief? There was no fraud. But we have held repeatedly in this class of cases that fraud is not an essential requisite to a recovery for a deficiency in acreage. Even if the representations be innocently made, and if the vendee relies on them; or if no actual representation be made, and the parties act in the mutual belief that the land contracted for contains a certain acreage, and in that belief the vendee pays and the vendor receives the purchase price, computed upon the basis of such acreage at a definite price per acre, then, if there be a mistake as to such acreage, equity will correct it, upon discovery, by awarding relief to the injured party, predicated upon the actual area of the subject-matter. We have applied this rule most frequently to extend relief to a vendee who has overpaid the price because of a deficiency of area.. *Boddy v. Henry,* 126 Iowa 31; *Fisher v. Trumbauer & Smith,* 160 Iowa 255; *Gardner v. Kiburz,* 184 Iowa 1268; *Weekly v. Yost,* 189 Iowa 536.

We have also applied it in extending relief to a vendor where, by a mutual mistake, the vendee paid, on a basis of acre-

2. VENDOR AND PURCHASER: rescission: shortage in acreage.

age for materially less than was contained in the tract. *Henn v. McGinnis*, 182 Iowa 131.

In order to obtain this relief, we have held it necessary for the plaintiff to show, either that the purchase was made at a definite price per acre (*Fisher v. Trumbauer & Smith*, 160 Iowa 255, *Weekly v. Yost*, 189 Iowa 536, *Henn v. McGinnis*, 182 Iowa 131), or, if the purchase price was a lump sum, that there was a representation of definite acreage. *Gardner v. Kiburz*, 184 Iowa 1268; *Boddy v. Henry*, 126 Iowa 31.

In short, the rule of liability in this class of cases is a very liberal one in favor of correcting the mistake by awarding compensatory relief to the injured party.

Under the operation of this rule, there can be no question of the correctness of the decree, in so far as it found plaintiff entitled to relief. The more difficult question is whether the relief should have gone so far as to rescind the conveyance and to wholly overturn the transaction. To that question we turn.

III. The very liberality of the rule set forth in the foregoing renders it a very dangerous one if, by such liberality, it is to result in easy rescission of long executed conveyances of real estate. It is a matter of general observation to bench and bar that a large percentage of the original government surveys of agricultural lands in this state were in some degree inaccurate. The work was done under difficulties, and at a time when an acre of land had only nominal value. Section lines theoretically straight are not so in fact. This necessarily has resulted in more or less surplus and deficiency in the areas of recognized government subdivisions. When the value of an acre of land was nominal or small, a surplus or deficiency of two or three acres in a subdivision might well be regarded as not important. In view of the highly increased values of the present, such valuations take on an increasingly added importance. They naturally command their place in the computation of the purchase price. The rule which we have considered in the foregoing division operates with great simplicity, and almost automatically, to award both to vendor and vendee a right to a computation of the total purchase price upon a basis of the actual area, where the price per acre has been agreed on. This relief is awarded without much regard to the statute of limitations, until after

the discovery of the mistake. If it be now held, therefore, that the party seeking relief may, as a matter of right, at his own election demand a *rescission* years hence of a conveyance made years ago, then all the farm sales which have been consummated in a decade are potentially exposed to the possibility of being opened and set aside at the behest of a surveyor's chain. If such remedy is open to the vendee, it must be open also to an innocent vendor. In case of a mutual mistake, both parties are deemed innocent. In the face of such a remedy, no innocent vendor can ever know whether he has sold irrevocably unless he first employs a surveyor to make a measurement of his ground before he sells it. When we reflect that different surveyors will often disagree in their measurement of the same area, even one survey may not be a sufficient protection to him. Inasmuch as we have applied to the vendor the same rule of compensation as we apply to the vendee, and have treated their rights as reciprocal, it follows that the *vendee* must run the risk of a *surplus*, and be subject to the possible right of his vendor, years hence, to demand a rescission, because of mutual mistake in the area of the subject-matter. Rescission of an executed conveyance is the converse of specific performance of a contract. Like specific performance, it is an extraordinary remedy, and is ordinarily not available to a litigant as a matter of right, but is awarded in the judicial discretion of the court, only for the purpose of obtaining equity; and where both parties are innocent, the court will guard the equities of the defendant as carefully as those of the plaintiff.

In this state, we have never extended the remedy of rescission to this class of cases. Neither have we refused to do so, except, perhaps, indirectly. In *Henn v. McGinnis,* 182 Iowa 131, 135, it was contended by the defendant that the only remedy to which plaintiff was entitled was that of rescission. In that case, as in this, the vendee, in his contract, agreed to pay "$110 an acre." The contract also specified the sum total. The computation was made upon the mutual supposition that the tract contained 32.44 acres; whereas, it was later discovered that it contained 41.69 acres. The vendor sued to recover the value of the surplus. In response to the contention of defendant that rescission was plaintiff's remedy, we said:

"But in the case before us, the defendant did agree to purchase the tract, and all of it, at $110 per acre. Strictly speaking, the mutual mistake was not in the contract proper, but in the computation made pursuant to the contract. The fact that such computation was inserted in the contract made it no less a computation, in view of the fact that the rate per acre was specifically agreed upon. * * * The plaintiff could not have demanded a rescission. Notwithstanding the mutual mistake, she was still bound to convey at $110 per acre. Having no right to rescind, it were an idle ceremony on her part to offer to rescind. We think it clear, therefore, that she asked for the only relief to which she was entitled : namely, a correction of the computation and the adoption of the correct acreage as a basis of such computation. Being entitled to this relief, it necessarily follows, under the undisputed evidence, that she was entitled to recover the unpaid purchase money, amounting to $1,017.50.''

In *Gardner v. Kiburz,* 184 Iowa 1268, at 1280, we said :

"Subject to this reasonable restriction, full justice is done by holding each party to the full performance of his contract, requiring the purchaser to pay the agreed price in full, and the seller to furnish the promised consideration in full.''

Appellee cites a large number of our cases where a rescission has been decreed. So far as these relate to real estate, however, each of them is predicated either on actual fraud or upon failure of title. So far as they relate to personal property, they are all predicated either on actual fraud or breach of warranty or a failure of the consideration. It is always true, also, that a court of equity will more readily rescind an unperformed contract than it will an executed one. In such a case, the ground of rescission is necessarily a ground of defense to the specific performance of the contract. On the merits, the denial of specific performance of an unperformed contract amounts to a rescission of it.

It is equally true that a court of equity has power to rescind an executed contract, but it will not do so if the rescission operates inequitably upon an innocent defendant. Though it be true in a given case, therefore, that a plaintiff may not be guilty of laches for long lapse of time before demanding rescission, yet it is also true that a long lapse of time does, of itself, create

equities in favor of an innocent defendant which the court cannot ignore.

In *Atlantic Delaine Co. v. James,* 94 U. S. 207, it was said:

"Canceling an executed contract is an exertion of the most extraordinary power of a court of equity. The power ought not to be exercised except in a clear case, and never for an alleged fraud, unless the fraud be made clearly to appear; never for alleged false representations, unless their falsity is certainly proved, and unless the complainant has been deceived and injured by them."

In *Roseboom v. Corbitt,* 196 Fed. 627, it was said:

"In our opinion, the deficiency of 17.44 acres out of a total of 373 acres is not ground for rescinding the contract. The contract sought to be rescinded has been fully executed."

The following quotation from *Reid v. Burns,* 13 Ohio St. 49, is a pertinent discussion of the question here under consideration:

"The rescission, cancellation, or delivery up of agreements, securities, or deeds, is said to be one of the heads of equity jurisdiction indispensable to reciprocal justice. It is the converse of a specific performance. The ground for the equitable relief, in either case, is the same. The equity arises from the fraud which the circumstances of the case show would be perpetrated, but for such interposition of the court, upon the party asking such relief. In neither case can the relief be claimed by the party as his strict right; but in both cases, an application for specific performance, and an application for a rescission of a contract, or reconveyance of lands, securities, etc., the relief asked is granted or refused by a court of equity upon its own conclusions, from all the attending circumstances, that the relief is or is not just and reasonable in the particular case. It is said, too, that the plaintiff will be expected, in a court of equity, in such cases, to show himself entitled to relief beyond a mere technical breach of duty. The court will also, in some cases, order an indenture to be canceled or annulled, on the application of one party, when it would refuse similar relief on the application of another,—showing very clearly that the court, in such cases, has an ample discretion. And still the discretion exercised upon such applications by courts of equity is not an

arbitrary discretion; but it is said to be 'a sound and reasonable discretion, and regulated upon grounds that make it judicial.' The court, however, often considers, before granting it, whether the relief prayed would be attended with hardship or not; or whether a superior or inferior equity arises on the part of the applicant. See Story's Equity, Sec. 692, *et seq.;* and Willard's Eq. Jur., 302, *et seq.*"

Applying these rules of equity to the case before us, we have a case of mutual mistake in the computation of the price paid. Both parties are before the court with clean hands. The contract named the price per acre that the vendee was to pay. It also named the sum total, based upon an assumed acreage of 237 acres. Under this contract, the vendee was not bound to pay in excess of $187.50 per acre for the actual acreage. He paid more, and is entitled to a return of the excess. Though the vendor believed that he was to receive a sum total of $44,437.50, yet, under his contract, he was bound to accept the lesser sum, based upon the actual acreage. If the vendee is entitled to demand a rescission as his remedy because of the mistake, it would follow that the vendor would have been entitled to demand the same remedy if he had been the injured party. Is the equity for plaintiff, as vendee, any stronger than it would have been for decedent, Clark, as vendor, if, following the sale and conveyance, a surplus had been discovered and there had been a large advance in values? If such an advance had taken place, it may fairly be supposed that, when the plaintiff, as vendee, discovered the shortage, he would have demanded only a pro-rata abatement of the purchase price. Suppose, in such an event, he were confronted with a counter demand by the vendor for an alleged surplus, and for a rescission on the ground of a mutual mistake, and on the ground that he would not have sold at all if he had known that there was either a surplus or deficiency. In such a case, the ulterior purpose of the vendor to get back the land which had increased in value would be quite manifest. It is hardly conceivable that a court could deem it equitable, even in the event of a surplus, to grant him the remedy of rescission, even though the mutual mistake might be unquestioned. The position of the plaintiff herein, though reversed, is not dissimilar. The evidence discloses that, since July, 1919, lands in that lo-

cality had greatly decreased in value. It is to his interest, therefore, today to cancel the conveyance of 1919. Such interest, however, is extraneous and ulterior, and does not arise in any manner out of the mutual mistake of 1919. The purchase, in the light of subsequent events, proved unprofitable, but the deficiency in acreage rendered it less unprofitable than it otherwise would have been. As in *Henn v. McGinnis,* supra, it was essentially a mistake in computation of the total price. It did not go to the identity of the farm. The farm was fully and accurately described, both by government description and by the name of the "McDonald Farm." Its boundaries were known to the plaintiff. He saw the farm, and saw all of it. All the land within the boundaries that he saw and all the land in the government description was conveyed to him. There was no outstanding title as to any part of it, and no withholding of possession of any part. He knew what he was receiving. He purchased it by a fixed price per acre, be it "more or less." We are impressed that the phrase "more or less" has a somewhat different significance in a contract in this form than it does in a case of a gross sale for a lump sum. The effect of this contract was to charge the vendee with $187.50 for the full, actual acreage of the farm, be it "more or less" than 237 acres. In any event, this is the objective of equity in awarding compensation either to vendor or vendee, for surplus or deficiency, as the case may be. The contract herein, so construed, operates automatically by its own terms to correct a mistake of area, and operates consistently with the rule in equity. A false representation innocently made by one party to a contract while believing it to be true, and relied on by the other party as true, is often, and perhaps usually, the equivalent of a mutual mistake; and this is the underlying reason for the equity rule which extends relief in such cases without proof either of *scienter* or actual fraud.

The point is made by appellee that, because of certain peculiar facts in this case, the ordinary rule of awarding compensation for the deficiency would not result in equity to the plaintiff. He contends that the land involved in the deficiency was much more valuable per acre than the average of the farm.

It appears that the north boundary of this land is the Des Moines River. The following plat will indicate the form of the farm:

It will be seen that the government subdivision lying on the south bank of the Des Moines River was irregular in shape.

Under the original government survey, this subdivision was surveyed and platted as Lot 6, and was said to contain 57.50 acres. The present survey indicates an actual acreage of 30.52 acres. It is argued, therefore, that the entire loss falls on this government subdivision, and that this was the most valuable land upon the farm, and that the plaintiff bought the land, believing that Lot 6 contained 57.50 acres, and that this lot and the 40-acre subdivision joining it on the south comprised "second-bottom land," with a slight deduction to be made for first-bottom land, lying close to the river bank. He contends that the supposed 97 acres contained in these two divisions would have been worth $400 per acre. It is not claimed that *first-bottom* land would have been worth any such sum. On the contrary, it would be depreciated in value, because it was subject to frequent overflows, and every planting of crops thereon must take the risk of such overflow. Under the law, the land abutting upon this river took the gain of its accretions and the loss of its decretions, without losing its identity. The deficiency in Lot 6 may have been caused by decretion or may have been the result of a mistake in the original survey. There is some evidence of the former course of the river which would indicate that the loss was the result of decretion. The record does not support the predicate of plaintiff's argument at this point. Plaintiff, as a witness, did testify that the *second-bottom* land would have been worth $400 an acre. The record does *not* show that Lot 6 was second-bottom land. Brady, the engineer, as witness for the plaintiff, testified:

"That Lot 6, except the south 200 feet thereof, is the lowest level on what is called first-bottom land; that this bottom covers all of Government Lot 6, except about the south 200 feet of the same, which is seven or eight feet higher than the low bottom. This south 200 feet of Government Lot 6 would be called second bottom. The balance would be first bottom."

The plaintiff himself testified that, "along the south bank of the river, there was a considerable crop of underbrush and trees." If the foregoing evidence on behalf of the plaintiff proves anything, it is that the deficiency came out of the *first-bottom* land. There can be nothing in the contention, therefore,

that compensation at the agreed price per acre would not work equity.

One other observation remains to be made. The decree in this case was carefully drawn, with a view of restoring the *status quo* of the parties. Its provisions illustrate, however, how difficult, if not impossible, it is to restore the *status quo* equitably to both parties after a long lapse of time following a completed transaction.

The plaintiff made valuable improvements upon the farm. In the decree, the cost of these improvements is charged to the defendants, though they had no choice or voice therein. What operated as equity for the plaintiff was harsh upon the defendants. The plaintiff also paid the taxes during the two or three years of his possession. In the decree, these taxes are charged to the defendants, with interest. This restored the *status quo* to the plaintiff. Did it restore the same to the defendants? During the same period of time, they had presumably paid the taxes upon the $44,000 of purchase money. They can have no relief for such payment. On the other hand, by reason of his purchase of the farm, the plaintiff escaped assessment upon all the moneys and credits which he had invested in the farm, and now, by the decree, escapes the taxes upon the farm. The result is that the defendants come under the burden of double taxation, by having to pay the taxes both upon the farm and upon the purchase money thereof; whereas the plaintiff, by the operation of events, escapes all taxes, whether on the farm or on the investment therein.

Closing our eyes to the extraneous circumstances surrounding these parties, and especially to the fluctuations of the real estate market, we reach the conclusion that compensation for the deficiency under the rule is a complete and adequate remedy, and does full equity, and that rescission of the contract ought not to be awarded.

Under his prayer for general equitable relief, the plaintiff may take decree as here indicated, and the decree entered below will be modified accordingly. If, for any reason, it shall seem desirable that the case should be remanded for final decree in

the district court, we will give further consideration to that question, upon motion by either party.—*Modified and affirmed.*

PRESTON, C. J., ARTHUR and FAVILLE, JJ., concur.