<hr/>

## In re HAMILTON FURNITURE & CARPET CO.

## PENINSULAR STOVE CO. v. MITCHELL.

### (District Court, D. Indiana.   October 6, 1902.)

### No. 1,168.

1. BANKRUPTCY—FRAUDULENT PURCHASES—RESCISSION BY SELLER—EVIDENCE.
    Where a bankrupt, prior to his failure, represented to a commercial agency that it was worth $32,875 over all liabilities, when in fact its property was not greater than 50 to 60 per cent. of its liabilities, and, on the purchase of goods, falsely informed the seller's traveling salesman that it was perfectly solvent and had $25,000 paid-up capital, the seller was entitled to disaffirm the sale, and recover the goods from the buyer's trustee in bankruptcy, without proof that the buyer at the time of purchasing the goods actually intended not to pay for them.

<hr/>

¶ 1. See Bankruptcy, vol. 6, Cent. Dig. § 219.

In Bankruptcy.

W. R. Coffroth, for petitioner.

Stuart, Hammond & Sims, for trustee.

BAKER, District Judge.  The petitioner, the Peninsular Stove Company, filed its petition in the nature of a bill in equity against William C. Mitchell, trustee of the estate of the Hamilton Furniture & Carpet Company, which had been adjudged a bankrupt on March 10, 1902, for the rescission of a contract of sale of a lot of stoves made by it to the bankrupt on December 27, 1901, and for the return of the stoves, or their value, on the ground that the contract of sale had been induced by the false and fraudulent representations of the bankrupt.  The sale was made through a traveling salesman of the petitioner, who made inquiry of the bankrupt as to its solvency, and he was informed by the purchasing officer of the bankrupt that the company was perfectly solvent, and had $25,000 of paid-up capital behind it.  The traveling salesman took the order for the goods, and reported it, with the representations of the bankrupt, to the petitioner.  The petitioner then obtained a report from the Dun Mercantile Agency, of which it was a patron, of the financial standing of the bankrupt.  The mercantile agency furnished to the petitioner a copy of a statement in writing made to the agency on February 1, 1901, by the bankrupt, which sets out the assets and liabilities of the bankrupt, showing that it was worth $32,875 over and above all liabilities.  The petitioner was induced by these statements, which it believed and relied upon as true, to sell and ship to the bankrupt between the 6th and 31st days of January, 1902, stoves to the amount and value of $550.27.  The representations of the bankrupt were false, and were known to have been so at the time they were made, and the petitioner, relying upon them as true, sold and delivered the stoves to the bankrupt.  The bankrupt was grossly insolvent on February 1, 1901, and continued to be insolvent from that time until it was adjudged to be a bankrupt.  From February 1, 1901, until it was adjudged a bankrupt, it was not possessed of property and assets to a greater amount than 50 or 60 per cent. of its liabilities.  On these facts the referee decreed that the contract of sale should be rescinded, and the trustee was ordered to pay to the petitioner the value of the the goods, which had been sold under an order of the court.  The trustee has taken an appeal, and asks the court to review and reverse the finding and order of the referee.  The right to such review and reversal is bottomed on a single proposition, thus stated:

"To entitle the petitioner to rescind the contract set forth in the intervening petition, it was incumbent upon it to show that the purchase was made by the bankrupt while insolvent, with the preconceived design then present in its mind not to pay for the stoves."

It is well settled that where a party, by fraudulently concealing his insolvency and his intent not to pay for goods, induces the owner to sell them to him on credit, the seller, if no innocent third party has acquired an interest in them, is entitled to disaffirm the contract and

recover the goods. Donaldson v. Farwell, 93 U. S. 631, 23 L. Ed. 993. This is but a modern application of that ancient doctrine that where a party by false representations as to his solvency, knowingly made, induces the owner of goods, who, in ignorance of their falsity relies upon such representations, to sell them, he is entitled to disaffirm the contract and recover the goods. Fraud renders all contracts voidable ab initio, both at law and in equity. No man is bound by a bargain into which he has been deceived by fraud, because assent is necessary to a valid contract, and there is no real assent where fraud and deception have been used as instruments to control the will and induce the assent. In the present case the fraud consisted in representations made by the bankrupt that it was solvent, and was worth more than $30,000 above all liabilities, which representations, when made, were known to be false, and were made to influence the conduct of the petitioner. The petitioner believed them to be true, and, relying on their truth, was induced to sell its goods to the bankrupt, which was then grossly insolvent, as it knew, not having the ability to pay more than 50 or 60 cents on the dollar of its indebtedness. A party induced to sell goods by so gross a fraud is entitled to disaffirm the sale and recover the goods or their value, unless, with knowledge of the fraud, he has affirmed the sale, or unless he has been guilty of laches in asserting his right to disaffirm, or unless the rights of innocent third parties have intervened. Turner v. Ward, 154 U. S. 618, 14 Sup. Ct. 1179, 23 L. Ed. 391. The petitioner has done no act in affirmance of the sale. It promptly disaffirmed the sale on learning of the fraud, and no rights of innocent third parties have intervened. Where a sale of goods is induced by false and fraudulent representations, intention to pay for them does not sanctify the fraud, and the party defrauded is entitled to rescind without regard to such intention. In such a case of active and aggressive fraud, the question whether or not the wrongdoer intended to pay is immaterial. Judd v. Weber, 55 Conn. 267, 11 Atl. 40. The trustee holds the goods affected with the fraud of the bankrupt. Neither law nor morals will justify the trustee in holding goods obtained by the fraud of the bankrupt for the benefit of other creditors. Creditors have no right to profit by the fraud of the bankrupt to the wrong and injury of the party who has been deceived and defrauded. Oil Co. v. Hawkins, 20 C. C. A. 468, 74 Fed. 395, 33 L. R. A. 739. The written statement made by the bankrupt to the Dun Mercantile Agency of its financial standing was made for the purpose of being communicated to wholesale traders, and with the intent to gain credit, and to have it relied upon as true; and the petitioner had the same right to rely upon it as though it had been made directly to itself. It was a continuing representation so long as the bankrupt gave no notice of a change in its financial standing. Eaton Coal & Burnham Co. v. Avery, 83 N. Y. 31, 38 Am. Rep. 389. It seldom happens that a case of palpable fraud so clearly established is presented for consideration.

The order of the referee is affirmed, with costs.