In re INDEPENDENT COAL CORPORA-
TION. *

### Appeal of UPDIKE.

(Circuit Court of Appeals, Second Circuit.
March 7, 1927.)

### No. 181.

1. Sales ☞82(1)—Contract for sale of coal held to contemplate payment in 30 days rather than cash on delivery.

Contract for sale of coal, which authorized seller to suspend delivery if financial responsibility of buyer became "unsatisfactory," and provided that the "terms of payment" should be "of the essence of the contract," but in no place stated such terms, held to contemplate payment in 30 days from delivery rather than cash on delivery.

2. Evidence ☞417(12)—Finding as to terms of payment contemplated by written contract, but not specified therein, held not to vary or add to contract.

Where contract for sale of coal in no place stated the terms of payment a finding that payment in 30 days from delivery was contemplated did not add to or vary the terms of the writing.

3. Bankruptcy ☞140(1)—Seller held not entitled to rescind contract and reclaim coal or its proceeds from trustee in bankruptcy of buyer, without showing of intent not to pay when coal was purchased.

Seller of coal held not entitled to rescind contract and reclaim coal or its proceeds from trustee in bankruptcy of buyer, in absence of any proof of intent not to pay when purchase was made, notwithstanding knowledge of insolvency.

4. Sales ☞44—In absence of false representations, seller cannot rescind, without showing insolvency of buyer, knowledge thereof, and intent not to pay.

Seller of coal may rescind contract for material false representations inducing sale, without proof of any intent not to pay; but, when no false representations inducing contract are made, insolvency of buyer, knowledge

thereof, and intent not to pay must be shown to warrant rescission.

Appeal from the District Court of the United States for the Southern District of New York.

Reclamation proceeding by the Empire Coal Mining Company against Godfrey Updike, as receiver and trustee in bankruptcy of the Independent Coal Corporation. From an order allowing the reclamation, the trustee appeals. Reversed and remanded, with directions to dismiss the petition.

Shortly after the filing of the petition herein, Empire Coal Mining Company brought this reclamation proceeding, setting forth that on or about September 30, 1925, it agreed to sell and deliver to the bankrupt about 3,200 tons of coal, which (as was alleged) should be paid for "in cash upon delivery." The delivery was to be "f. o. b. piers, to be loaded around October 5th, * * * approximately 2,200 tons at Port Reading, 1,000 at South Amboy," New Jersey.

The bankrupt procured boats to go to the loading ports and get the coal. On October 7th one boat took 880 tons at South Amboy. On October 8th another one took 597 tons at Port Reading, and another one took on the same day at the same place 407 tons. Bills of lading were issued by the masters of the coal boats promising to deliver the coal to the bankrupt at New York, but at no particular place in that city.

The bankrupt sold the coal to the steamship Edison, which was lying at the Bush Terminal, Brooklyn, and the laden boats ultimately proceeded alongside that vessel. Delivery of coal from the South Amboy boat to the Edison was begun on October 8th and finished on the 9th. One of the Port Reading

18 F.(2d)—1     *Certiorari denied 47 S. Ct. 764, 71 L. Ed. —.

boats began delivery on the 9th and finished on the 12th, and the other boat from Port Reading began and finished delivery to the steamer on October 12th. This involuntary petition in bankruptcy was filed October 10, 1925, and a receiver was appointed on the afternoon of that day, shortly after the filing of petition. The money derived from the sale of the coal to the Edison became by agreement a special fund and is the subject of this litigation.

Besides averring (as above) that the coal was to be paid for on delivery, the petition in reclamation charges that at the time said coal was sold and delivered the "bankrupt was insolvent to its knowledge, and, so knowing its insolvency, concealed the same from the petitioner, and induced that petitioner to sell and deliver the coal with the intent and design on the part of said bankrupt not to pay therefor." Further matters of evidence will be referred to in the opinion. The court below allowed the reclamation and awarded the fund to petitioner, whereupon the trustee appealed.

Isadore Shapiro, Frank M. Swacker, Ambrose V. McCall, and Leonard Acker, all of New York City, for appellant.

Patterson, Eagle, Greenough & Day, of New York City (Charles D. Francis and Carroll G. Walter, both of New York City, of counsel), for appellee.

Before HOUGH, HAND, and MACK, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). The sale is evidenced by a written contract, in the main a printed form, signed by Empire Company's New York agent (its main office being in Philadelphia) and Independent Company's treasurer. Agreement was that coal should "be delivered f. a. s. (free alongside), t. i. b. (trimmed in buckets), and f. o. b. (free on board) * * * around October 5," 1925, the larger part at Port Reading and the rest at South Amboy. The printed conditions of sale are explicit that "coal delivered on board * * * boats * * * is to be in all respects at purchaser's risk"; that the contract price might be changed by variations in wage and railroad freight conditions; that seller could suspend shipments, should the financial responsibility of the buyer become "unsatisfactory," and that "terms of payment" should be "of the essence of the contract," but nowhere in any writing, nor by any oral testimony, is there any statement of what the terms of payment were to be.

As stated already, petitioner (the seller) pleaded that terms were to be "cash on delivery"; but the record leaves that allegation with no support but the general and undoubted rule of law that, in the absence of any agreement express or implied on the subject, payment is to be contemporaneous with delivery.

[1, 2] Delivery in this case was admittedly on board boats chartered by buyer, at coal-loading ports where neither buyer nor seller had representatives, and, so far from payment at any such times or places being agreed upon or intended, we find and hold that the evidence plainly shows a uniform custom or usage in the New York coal trade that sales such as this contemplated payment in 30 days from delivery, with a discount usually allowed for payment before that date. This finding does not add to or vary the written contract, because the writing is silent. Therefore the sale was not for cash, but on credit, and title to the coal passed when and as it was loaded into the bankrupt's chartered boats.

[3] It follows that bankrupt had good right to sell and pass title to the agents or owners of the steamship Edison, and did so. It is such a contract, and not the cash sale pleaded, that the seller petitioner wishes to rescind.

The material facts between sale and attempted rescission are (despite a bulky record) very few. When contract made on September 30th, and thereafter until the coal was delivered on October 8th, there is no evidence of any representations made by buyer nor information asked by seller. On October 8th an officer of seller in Philadelphia asked buyer by telephone for "a definite financial statement of the" Independent Company. The person answering said he could not do it, but would "have Mr. Lane (the treasurer) do so." No statement having arrived in Philadelphia by the morning mail of October 9th, seller called by telephone its agent in New York and instructed him to "get in touch" with the buyer's treasurer, and "ask why that statement had not been forwarded."

The agent did not talk with bankrupt's treasurer, but was told by some one in the office that a letter had been written that day. On October 10th the letter was received in Philadelphia; it is not a financial statement, but a reference (naming them) to "a few of the firms with whom we have been doing business," together with certain "banking references." On the same October 10th rumors of failure by Independent Company reached Philadelphia, and unsuccessful efforts were made to get back the coal already shipped, and all further shipments were stopped.

Shortly after noon of that day the involuntary petition was filed. At all times on and after September 30th Independent Company was grossly insolvent, and the corporate officers knew that fact.

But we cannot find that the buyer intended not to pay. While the company was insolvent, its ability to go on in business depended upon two creditors, large coal companies, who plainly controlled its affairs. As long as these creditors agreed with each other, it was obviously better to let the Independent go on and sell coal, and down to the morning of October 10th they were still in consultation as to how the controlling debts due them should be handled and the business continued. The Independent Company and its officers could do nothing when these two creditors disagreed, and bankruptcy followed in a few hours. But, so far from intending not to pay, we think it clear that Independent Company intended and expected to pay, and would have paid, had not, ten days later, the two controlling creditors fallen apart.

[4] The law applicable to this case is well settled. If any material false representations were made, inducing the sale, rescission is permitted, without any proof of intent not to pay; but, when no representations inducing contract to sell were made, then there must be shown insolvency, knowledge thereof, and intent not to pay, which is the rule of Donaldson v. Farwell, 93 U. S. 631, 23 L. Ed. 993. The cases in this circuit are In re N. Y. Commercial Co., 228 F. 120, and Marion, etc., Co. v. Girand, 285 F. 160. The rules have been recently summarily restated in Re Sherman (C. C. A.) 13 F.(2d) 121.

Result is that the order appealed from is reversed, with costs, and the matter remanded, with directions to dismiss the petition.