## MANLY v. OHIO SHOE CO.

### In re BALTIMORE SHOE HOUSE, Inc.

Circuit Court of Appeals, Fourth Circuit.
April 10, 1928.

No. 2645.

1. Bankruptcy ⬤⟞140(2)—Seller may rescind contract and reclaim goods obtained by bankrupt's fraud if he can identify them in trustee's hands.

Where goods are obtained by bankrupt's fraud, seller may rescind contract of sale and reclaim goods if he can identify them in hands of trustee, and this does not result in preference in favor of seller retaking goods, since he merely retakes his own property and bankrupt's creditors have no right to profit by bankrupt's fraud.

2. Bankruptcy ⬤⟞140(2)—To justify seller's rescission of contract and reclamation of goods, bankrupt's fraud must be established by clear, unequivocal, and convincing evidence.

Bankrupt's fraud, to justify rescission of contract and reclamation of goods by seller, must be established to the satisfaction of the court by clear, unequivocal, and convincing evidence.

3. Bankruptcy ⬤⟞140(2)—Buyer's insolvency at time of purchase, intention not to pay for goods, and concealment of facts justifies seller's reclamation of goods for fraud.

Fraud of bankrupt justifying rescission of contract and reclamation of goods by seller is established, where it is shown that bankrupt was insolvent at time of purchase and did not intend to pay for the goods, and concealed such insolvency and intent from seller.

4. Bankruptcy ⬤⟞140(2)—Material false representations as to financial condition entitle seller relying thereon to reclaim goods for fraud on buyer's bankruptcy.

Bankrupt's fraud, justifying rescission of contract and reclamation of goods by seller, is established where it is shown that bankrupt obtained goods by means of material false representations as to his financial condition, which were relied on by seller in making the sale on credit, even though bankrupt may have intended to pay and did not know falsity of his representations.

5. Bankruptcy ⬤⟞140(2)—Knowledge of buyer's officers of buyer's insolvency held equivalent of "intent not to pay," entitling seller to rescind for fraud.

Where officers of buyer corporation knew when it ordered goods that it was hopelessly insolvent and had no reasonable prospect of paying for them except by giving an unlawful preference to seller, this was the equivalent of the "intent not to pay," entitling seller to rescind for fraud and reclaim goods from buyer's bankruptcy trustee.

6. Bankruptcy ⬤⟞212—Failure to examine bankrupt's officers on issue of false financial statement held to strengthen presumption that bankrupt did not intend to pay for goods.

Where there was testimony that officers of bankrupt corporation had issued a false statement as to its financial condition, and that sale was made in reliance thereon, failure to examine officers of corporation strengthened presumption that bankrupt purchased goods, intending not to pay therefor.

7. Bankruptcy ⬤⟞140(2)—False financial statement to commercial agency, relied on by seller, constitutes fraud entitling seller to rescind and reclaim goods.

One making a false financial statement to a commercial agency to secure a credit rating to which he is not entitled is engaged in the perpetration of or attempt to perpetrate a fraud, and, when he attains a credit rating and by means thereof secures goods from agency subscriber, the fraud is consummated, and seller induced to part with goods by such fraud is entitled to disaffirm the sale on that ground and retake goods if he can find and identify them before they have passed into the hands of a bona fide purchaser or other person having a superior equity.

Appeal from the District Court of the United States for the District of Maryland, at Baltimore, in Bankruptcy; Morris A. Soper, Judge.

In the matter of the bankruptcy of the Baltimore Shoe House, Inc. From an order directing George W. Manly, trustee in bankruptcy, to return to petitioner, Ohio Shoe Company, certain goods on its petition for reclamation (20 F.[2d] 134), trustee appeals. Affirmed.

G. Ridgely Sappington, of Baltimore, Md. (J. Purdon Wright and Charles G. Baldwin, both of Baltimore, Md., on the brief), for appellant.

Henry E. Beebe, of Cincinnati, Ohio, and John L. G. Lee, of Baltimore, Md., for appellee.

Before WADDILL, PARKER, and NORTHCOTT, Circuit Judges.

PARKER, Circuit Judge. This is an appeal from an order directing that the trustee in bankruptcy of the Baltimore Shoe House, Inc., return to the petitioner, the Ohio Shoe Company, certain shoes in his possession as trustee. Return of the shoes was asked on the ground that bankrupt had obtained them by fraud and false representations as to its financial condition, that petitioner elected to

rescind the sale on that account, and that the goods could be readily identified, being intact in the warehouse of the bankrupt.

The facts upon which the claim of petitioner is based may be briefly stated. The shoes which are the subject of controversy were ordered by the bankrupt on May 1, 1926. At that time bankrupt was hopelessly insolvent and had no reasonable expectation of being able to pay for them. This insolvent condition was concealed from petitioner, and the shoes were duly shipped in June to be paid for August 15th. Upon arrival in Baltimore, they were stored in the warehouse of the bankrupt, where they remained until the adjudication of bankruptcy in August.

It appears that petitioner had had no prior dealings with the bankrupt, and that the acceptance of the order and the extension of credit therein provided for was based upon a credit rating in the latest book of R. G. Dun & Co., to which petitioner was a subscriber. This book rated bankrupt as being worth from $125,000 to $200,000 and its credit as being first grade. The book was issued in March, 1926, and was based upon a financial statement furnished by bankrupt in January of that year. In this statement, which was prepared by auditors under the direction of its officers, bankrupt was shown as having assets above liabilities, exclusive of stock liability, exceeding $220,000 and a surplus exceeding $120,000. As a matter of fact, it was hopelessly insolvent at the time, and the legitimate inference, as found by the District Judge, is that it was thus insolvent to the knowledge of its officers. None of the officers was examined in explanation of the false statement furnished Dun & Co. or of the purchase in the face of evident inability to make payment. In rating bankrupt, Dun & Co. had before it other information such as reports with regard to the bankrupt's standing; but it is fair to say that the rating was based upon the false statement furnished by bankrupt, as no such rating would have been given if bankrupt had refused to furnish a statement or if in the statement furnished it had truthfully stated its condition and thus shown its insolvency.

[1, 2] The law applicable to the case seems well settled. Where goods are obtained by fraud of the bankrupt, the seller may rescind the contract of sale and reclaim them if he can identify them in the hands of the trustee. This is on the theory that fraud renders all contracts voidable, and that neither in law nor in morals would the trustee be justified in holding goods obtained by the fraud of the bankrupt for the benefit of other creditors. Such creditors have no right to profit by the

fraud of the bankrupt to the wrong and injury of the party who has been deceived and defrauded. In re Hamilton Furniture & Carpet Co. (D. C.) 117 F. 774, 776; Standard Oil Co. v. Hawkins (C. C. A. 7th) 74 F. 395, 33 L. R. A. 739. This does not result in a preference in favor of the seller who thus retakes goods obtained from him by fraud, because in such case the seller retakes his own property which he must be able to identify. Cunningham v. Brown, 265 U. S. 1, 11, 44 S. Ct. 424, 68 L. Ed. 873. There is little in the suggested danger of improper preferences being obtained under the guise of thus rescinding contracts of sale and reclaiming goods sold on the ground of fraud; for in every case the fraud must be established to the satisfaction of the court by evidence clear, unequivocal, and convincing.

[3, 4] Fraud justifying rescission of the contract and reclamation of the goods by the seller is established, where it is shown that the bankrupt was insolvent at the time of the purchase and did not intend to pay for the goods, and concealed such insolvency and intent from the seller. Donaldson, Assignee, v. Farwell, 93 U. S. 631, 23 L. Ed. 993; In re Independent Coal Corporation (C. C. A. 2d) 18 F.(2d) 1; In re New York Commercial Co. (C. C. A. 2d) 228 F. 120; Jones v. H. M. Hobbie Grocery Co. (C. C. A. 5th) 246 F. 431; Collier on Bankruptcy (13th Ed.) vol. 2, p. 1717 et seq. Such fraud is established, also, where it is shown that the bankrupt obtained the goods by means of material false representations as to his financial condition, which were relied on by the seller in making the sale on credit. In re Weissman (C. C. A. 2d) 19 F.(2d) 769; William Openhym & Sons v. Blake (C. C. A. 8th) 157 F. 536. And rescission in the latter case is justified even though the bankrupt may have intended to pay and may himself have been misled as to his financial condition and not have known that the material false representations were untrue. Turner v. Ward, 154 U. S. 618, 14 S. Ct. 1179, 23 L. Ed. 391; In re New York Commercial Co., supra; 12 R. C. L. p. 345, § 100; Collier on Bankruptcy (13th Ed.) vol. 2, pp. 1717, 1718. In the case at bar we think that the evidence shows fraud of both kinds, and that the order directing the return of the goods was clearly justified.

[5] In the first place, the evidence justifies the conclusion that, when bankrupt gave the order for the shoes, its officers knew that it was hopelessly insolvent and had no reasonable prospect of paying for them except by giving an unlawful preference to the seller. This is the equivalent of "intent not to pay."

In re Henry Siegel Co. (D. C.) 223 F. 369; Gillespie v. J. C. Piles & Co. (C. C. A. 8th) 178 F. 886, 891, 44 L. R. A. (N. S.) 1; Jones v. H. M. Hobbie Grocery Co., supra (C. C. A. 5th) 246 F. 431; Morrow Shoe Mfg. Co. v. New England Shoe Co. (C. C. A. 7th) 57 F. 685, 693, 24 L. R. A. 417; Collier on Bankruptcy (13th Ed.) vol. 2, p. 1719; note 44, L. R. A. (N. S.) at page 11 et seq.; 12 R. C. L. p. 269, par. 36.

What was said by Judge Morton in the Siegel Case, supra, at 223 F. page 370, is applicable here, viz.:

"The learned referee was of the opinion that an intent not to pay for the goods had not been made out. While such an intent must be, of course, established, it is not necessary that there should be direct evidence of it; it may be, and usually is, inferred from the facts. When these goods were purchased, the buyer was deeply and hopelessly insolvent. Presumably the men in control of it were aware of its condition; there is no evidence to the contrary. They must have known, and their knowledge is imputable to the bankrupt, that it could not pay for these goods except at the expense of its other creditors, and by giving what would have been a preference; in other words, that it could not pay in an honest and regular way. Purchase under those conditions was, I think, the legal equivalent of purchase with an intent not to pay, and was fraudulent."

And in the case of Gillespie v. Piles, supra, Judge Sanborn states the rule tersely as follows:

"An insolvent buyer, who knows at the time of his purchase that his financial condition is such that it is and will be impossible for him to pay for his purchases, is conclusively presumed to have bought them with an intention not to pay for them; and a persuasive legal presumption to that effect arises from the fact that such a purchaser's affairs were in such a condition at the time of the purchase of the property that he could then have had no reasonable expectation of paying for it."

[6] The presumption pointed out by Judge Sanborn in the passage just quoted was certainly not met in this case. On the contrary, it was strengthened by the failure to examine the officers of the corporation in the face of testimony to the effect that they had issued a false statement as to its financial condition. Hart v. Moulton, 104 Wis. 349, 80 N. W. 599, 76 Am. St. Rep. 881; 12 R. C. L. 268, § 34.

[7] In the second place, we think that there was such a material false representation made by the bankrupt as justifies the rescission. The statement furnished to Dun & Co. was undoubtedly false and material. It undoubtedly enabled bankrupt to obtain the shoes in controversy from the petitioner. If it had been furnished to petitioner by Dun & Co., and petitioner had acted upon it in extending credit, there would be no question about the right of rescission. In re Weissman (C. C. A. 2d) 19 F.(2d) 769; Davis v. Louisville Trust Co. (C. C. A. 6th) 181 F. 10, 30 L. R. A. (N. S.) 1011; In re Epstein (D. C.) 109 F. 878. And we see no basis for the distinction which would deny rescission because the action of the seller was taken on the credit rating of the commercial agency based on the false report, instead of on the report itself. As stated above, the credit rating would not have been given if bankrupt had failed to furnish a report or if it had given a truthful report of its condition. The goods would not have been shipped if the credit rating had not been given. The false report was furnished to obtain the credit rating with knowledge that it would be acted upon by those from whom the bankrupt might solicit credit. We think, therefore, that no element of fraud is lacking, and that its consequences are not to be escaped because of the presence of the intermediary, the commercial agency. As was said by the Supreme Court of Wisconsin in National Bank v. Illinois & W. Lumber Co., 101 Wis. 247, 77 N. W. 185, quoted with approval by the Circuit Court of Appeals of the Sixth Circuit in Davis v. Louisville Trust Co., supra:

"The commercial agency which gathers and circulates reports as to the financial standing of business houses is an institution now so well established, and its reports are so universally used, that no court or merchant can plead ignorance of its purpose or functions. When a merchant states to such an agency his financial condition, he knows it is for publication to the business world, and that such publication will probably be consulted when he applies to any business institution for credit. He makes his statement, therefore, knowing that it will probably be used as a basis of credit. Upon what ground can it be said that such a statement is not a representation made for the purpose of securing credit as fully as if made personally to each business house with which he has dealings."

If the seller had employed a clerk to analyze financial statements and assign credit ratings to its customers, and bankrupt had furnished the false statement to him as a basis of credit, there would be no doubt in any one's mind as to the right of rescission. We see no difference in principle between

such case and that presented here, where, instead of employing a clerk to make the analysis, the seller subscribes to the published reports of an expert, a commercial agency, to which financial statements as a basis of credit are furnished by seller's customers. When the customer makes a false statement to such agency for the purpose of securing a credit rating to which he is not entitled, he is engaged in the perpetration of or the attempt to perpetrate a fraud. When he obtains the credit rating and by means thereof secures goods from the subscriber to the reports of the agency, the fraud is consummated. And we know of no reason, either in law or in logic, why one who has been induced by such fraud to part with his goods should not be allowed to disaffirm the sale on that ground and retake them, provided he can find and identify them before they have passed into the hands of a bona fide purchaser or other person having a superior equity.

For the reasons stated, the order of the District Court is affirmed.

Affirmed.