### In re PENN TABLE CO.
### No. 3346.

District Court, S. D. West Virginia.
March 15, 1939.

888

Lewis A. Staker, of Huntington, W. Va., for creditor.

J. B. Meek, of Huntington, W. Va., for trustee.

HARRY E. WATKINS, District Judge.

This is a review of an order of a referee denying petitioner, Henderson-Baker Lumber Company, the right to reclaim certain lumber, or the proceeds thereof, from the trustee. Reclamation is asked on the ground that the lumber was obtained from petitioner by fraud, because (1) the purchaser was insolvent at the time of purchase and, concealing its insolvency, did not intend to pay, and (2), affirmative misrepresentations made to induce sale.

An agreed statement of facts upon which the case was submitted shows that the lumber was purchased by Penn Table Company, bankrupt, a manufacturer of furniture, by written order of W. J. Young, its secretary, on September 15, 1937, upon terms 60 days net with trade acceptance. On September 21st, petitioner wrote "We have strained a point to accept this order in the face of reports of a good many of your former suppliers that you are rather slow pay; and are accepting this business on the assurance of Mr. Wm. J. Young that the 60 day trade acceptance will be taken care of when due". The lumber was received

September 29th, and on October 19th an involuntary petition in bankruptcy was filed against Penn Table Company, alleging that, while insolvent, it committed certain acts of bankruptcy, which insolvency was not denied.

Petitioner did not know, nor was it informed, of any financial difficulties of bankrupt at the time the order was accepted. At the time the lumber was ordered and at the time the petition in bankruptcy was filed, the bankrupt had assigned all of its accounts receivable in the amount of approximately $28,539.36 to a bank to secure money previously loaned. These assignments were made from time to time both before and after September 15th, the date of the lumber purchase in question. The accounts were assigned as shipments of furniture were made, "and the proceeds of the loans used to pay the expenses of operating the furniture plant".

At the time the lumber was ordered and at the time of bankruptcy, the bankrupt owed all of its employes for back wages for which they had signed stand-by agreements and for wages thereafter in the approximate amount of $3,000; owed its employes more than $16,000 additional wages for which they had not signed stand-by agreements; and also owed all of its officers back salary in the amount of $18,000 which included over $12,000 to its president, and $5,888 to W. J. Young, its secretary, who signed the order for the lumber in question. Some uncashed checks were outstanding in the hands of the president and others for salaries.

By agreement the lumber was sold for $725.84, and the demand is for this amount less any freight paid by the bankrupt.

The record shows that the bankrupt was hopelessly insolvent when bankruptcy came, and that its financial condition was not materially different seven weeks previous when the lumber was ordered. For the year immediately preceding bankruptcy it operated at a loss of more than $15,000. Its schedules show assets as follows: (1) real estate, machinery and equipment, furniture and fixtures,—placed at a value of $341,724.42 in bankrupt's schedules, which sold to Reconstruction Finance Corporation for $125,807.46, the amount of its lien debt, and (2) all other property of bankrupt consisting of finished furniture, furniture in process of manufacture and raw materials were sold for $32,600. The amount realized from sale will not pay the costs of administration and one-half of lien claims. If this claim is only a common claim as the referee ordered, nothing will be paid thereon.

Starting with the leading case of Donaldson v. Farwell, 93 U.S. 631, 23 L.Ed. 993, the various federal courts have held that it is a fraud which justifies reclamation of the seller's goods where an insolvent, concealing his condition, buys goods for which he does not mean to pay. Manly v. Ohio Shoe Co., 4 Cir., 25 F.2d 384, 59 A.L.R. 413; California Conserving Co. v. D'Avanzo, 2 Cir., 62 F.2d 528.

What was said by Judge Parker in the Manly case, supra, 25 F.2d page 385, is quite applicable here, viz: "In the first place, the evidence justifies the conclusion that, when bankrupt gave the order for the shoes, its officers knew that it was hopelessly insolvent and had no reasonable prospect of paying for them except by giving an unlawful preference to the seller. This is the equivalent of 'intent not to pay.'" Knowledge of inability to pay when the purchase is made is equivalent to purchase with intent not to pay and such purchase is constructively fraudulent. Good faith which rests only on ignorance due to wilful, reckless, or despairing failure to face the facts is, in proceedings of this nature, the legal equivalent of actual fraud and entitles the seller to reclaim his goods. If he really believes that he can pull out of his trouble, his purchases made for that purpose are not fraudulent, provided that his belief is not illusory merely and without any reasonable ground therefor.

It is difficult for both seller and buyer to predict the future. A company's affairs, however, may reach such condition that ordinarily honest persons would no longer buy if they had no better prospect to pay, and the seller is entitled to rely upon this implication. He may assume that the buyer would not promise if the chance of paying were so remote. Such a promise is more than a declaration of a conditional intent. It is an affirmation that such intent to pay has reasonable hope of fruition. If the buyer has no such reasonable hope of fruition, he deceives the seller and the contract may be rescinded. California Conserving Co. v. D'Avanzo, supra.

Where the findings of a referee are based upon conflicting evidence involving questions of credibility, great weight attaches to his conclusions, and his findings of fact should not be disturbed unless mani-

festly unsupported by the evidence. Bank of Ravenswood v. Johnson, 4 Cir., 143 F. 463. · But where the case is submitted to the referee upon an agreed statement of facts, as here, and the judge may as well draw inferences or deduce conclusions, the findings of fact of a referee do not have such great ·weight. Ohio Valley Bank Co. v. Mack, 6 Cir., 163 F. 155, 24 L.R.A.,N.S., 184.

Here the bankrupt's affairs were so precarious at the date of purchase of the lumber that its officers could have had no reasonable expectation of paying for it 60 days hence. Under such circumstances, a persuasive legal presumption arises that the buyer had no intention to pay as promised. Such presumption was not met by the bankrupt or its officers. No officer of the bankrupt company has testified, or attempted, either to deny or explain the charges of fraud made against them. None of them have attempted to explain the forlorn condition of the company as shown by the agreed statement of facts, or to disclose upon what facts their hopes or expectations, if any, of continuing in business, were founded. Presumably the men in control of it were aware of its condition; there is no evidence to the contrary. They must have known that the company could not have paid for the lumber except at the expense of its other creditors.

The officers of the bankrupt company have filed proofs of claim for their back salaries. If reclamation is denied, a portion of the proceeds from the sale of the lumber in question would go to these officers, including W. J. Young, who signed the purchase order. Equity requires that one should not be rewarded by his own misdeeds. Neither do creditors have the right to profit by the fraud of a bankrupt to the wrong and injury of the party who has been deceived and defrauded. In re Hamilton Furniture, etc., D.C., 117 F. 774. Neither law nor morals will justify the trustee in holding this lumber for the benefit of these officers and other creditors.·

Being of opinion that the purchaser, while insolvent and concealing such insolvency, purchased this lumber with no intent to pay for same, it is not necessary·to discuss the facts or law relating to affirmative misrepresentations alleged as a second ground for reclamation. The order appealed from is reversed with directions to allow reclamation.

Reversed.